IRENE McBRIDE *vs.* RUTH G. YOUNG, *Adm'x.*

FEBRUARY 13, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action in assumpsit on the common counts against the administratrix of the estate of Fred P. Young, late of Providence, deceased. It was tried to a jury in the superior court and resulted in a verdict for the plaintiff in the sum of $1566. Defendant's motion for a new trial, on the grounds that the verdict was against the law and the evidence and that the damages were excessive, was heard and denied. The case is before us on her exception to this decision.

It appears in evidence that the deceased, an elderly man, lived alone in a small cottage, and that the plaintiff, who also lived alone, had done weekly house cleaning for him from 1935 to 1945. The plaintiff testified that in February 1945, at his request, she went to live at his home as a housekeeper at the agreed rate of $10 a month and keep, and that in August of that year her pay was raised to $20 a month. Except for a balance of $6, it is clear from checks in evidence and by admission of the plaintiff that she was regularly and fully paid for her services as housekeeper.

Plaintiff's claim in the instant case is for one year's services as a practical nurse from early in February 1945 to February 9, 1946, when Mr. Young died, which services she maintains were in addition to and unconnected with her work as housekeeper. Her testimony, which comprised the only direct evidence on this point, divides itself into two distinct periods: the first, from February 1945 to July 23, 1945; and the second, from the latter date to Mr. Young's death, each approximately a period of six months. During the first period the evidence is clear that, although Mr. Young was somewhat feeble, yet he was able to take care of himself and also carry on a small ladder business that he conducted from his house. The second period presents an entirely different situation. On July 23 Mr. Young fell and suffered an arm injury that required hospital treatment for about one week, after which he returned home and remained bedridden until he died.

For the first of the above-mentioned periods, plaintiff's services as a nurse, if they may be so called, were of a trifling character. Her testimony was in substance that during the day Mr. Young "wanted plenty of waiting on"; she frequently had to "Give him a drink and get him his pipe"; and at night he at times called for a cold drink and she got it for him. The evidence with reference to the second period is entirely different and shows that plaintiff's services as a nurse were continuous, tiring and often of an unpleasant character.

Plaintiff's testimony as to what if any compensation she was to receive for nursing Mr. Young is as follows: "He always said he was going to pay me as soon as he got up and around. . . . He was going to make it right for me . . . ." This testimony was corroborated by Mabel L. Roberts, who testified that she heard Mr. Young make similar statements at various times to a Mr. Greene, her employer and a friend of Mr. Young, whom she accompanied on his visits to the latter. Mr. Greene died before the trial of this case. Basing her claim upon such promise, the plaintiff further testified that she should receive "$25 a week for the first 26 weeks, and the last 26, $35 a week." The jury awarded her the full amount of her claim as thus made, plus the $6 that was admittedly due her for services as a housekeeper.

After a careful reading of the transcript we are of the opinion that the trial justice was clearly wrong in approving the amount of the verdict, in that he misconstrued or overlooked the real import of that part of the evidence with reference to the nature and extent of plaintiff's services during the six months preceding Mr. Young's injury on July 23, 1945. The true value of that evidence was seriously obscured by the interjection of a number of collateral matters of slight importance, and also by the constant reference in great detail to what the plaintiff did or did not do for Mr. Young during the last six months of his life when he was bedridden.

Claims against the estate of a deceased person for alleged services rendered to him in his lifetime are subject to close scrutiny. In such a case, courts and juries should scan the evidence with special care so as to prevent the estates of deceased persons from being unjustly mulcted in damages. In order to support a verdict against an estate the proof must be clear and convincing. *Armour* v. *Doonan,* 55 R. I. 243; *Smith* v. *Frost,* 68 R. I. 241. In the instant case the proof respecting plaintiff's services to Mr. Young during the first six months is, in our judgment, clearly insufficient to support an award for services as a nurse; and the proof with reference to the succeeding six months, that is, during the time Mr. Young was bedridden, does satisfy the above-mentioned rule and therefore entitles her to compensation for that period in the sum of $916, which includes the balance of $6 due her for services as housekeeper.

The defendant's exception to the denial of her motion for a new trial is sustained on the ground of excessive damages, and the case is remitted to the superior court for a new trial, unless the plaintiff, on or before February 25, 1948, shall file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $916. If such remittitur is filed, the' superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

*Fergus J. McOsker,* for plaintiff.

*Charles R. Easton,* for defendant.