Rita Fagan *et al. vs.* Dorothy Negus *et al.*

APRIL 6, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This bill in equity seeks relief in the nature of specific performance of an alleged oral understanding and agreement whereby a testatrix during her life agreed to convey certain real estate to complainants. After a hearing on bill, answer and proof in the superior court a decree was entered granting the relief prayed for and the cause is before us on the respondent's appeal from that decree.

Complainant Rita Fagan is a niece and respondent Dorothy Negus is the daughter of Philomena Negus Fleming, hereinafter called the testatrix. The respondent is sued individually as a residuary devisee under, and as executrix of, her mother's will. Complainant Rita Fagan, hereinafter called Rita, apparently maintained a more friendly relationship with the testatrix than did the latter's daughter, the respondent. In 1945 complainants, a young married couple, who had two children at that time, were living in the first floor tenement of the cottage of Rita's father in the city of Pawtucket. It became necessary to seek living quarters elsewhere since such tenement was needed by her father and mother because of the latter's heart trouble.

The testatrix owned certain tenement property but had no vacancy for complainants at the time. Rita's husband had performed considerable service for testatrix on such property for which he never asked or received compensation. Evidently the testatrix desired to help the complainants in acquiring their own home and to that end offered to buy a house for them. Accordingly she and Rita after some effort finally located two houses on one

lot at 166-168 Harrison street in the city of Pawtucket, which were in poor condition but could be improved by complainants and made habitable. Testatrix and Rita then went to arrange for the purchase through a real estate broker in Pawtucket, who according to undisputed testimony was then told by the former that she was purchasing the property for her niece who was with her. The total purchase price was $4000, of which testatrix made a down payment of $1000 in cash and executed a bank mortgage of $3000 for the balance. The down payment plus certain tax adjustments, insurance and expenses totaled $1112.46.

From all the testimony it appears that the understanding and agreement at that time was that testatrix would buy the houses in her name but that complainants would make them habitable, move into the front cottage, take care of both houses, collect the rents from the rear cottage which would be turned over to the testatrix for payments on the bank mortgage, and in place of rent for their own living quarters in the front house they would also pay to her an amount equal to $7 weekly which would be applied to the payment of interest at 5 per cent and the principal of the down payment "mortgage."

It was expected and understood that complainants would be in a position to repay such mortgage and interest within a year, at which time testatrix would convey title to them subject to the bank mortgage which was to be assumed. The complainants relying on such understanding and agreement proceeded to expend considerable time, labor and some material in cleaning up both houses outside and inside so that they would become habitable. They were introduced by the testatrix to each tenant as the new landlords and began to collect rents and pay them to the testatrix in accordance with the understanding and agreement.

This continued for about three months when it became difficult for complainants to follow up rent collections because of the condition of Rita, who expected another

child, and the necessity to live elsewhere until one of the tenants could be ejected. The testatrix, having more time and living nearer, offered and undertook to relieve them of this obligation by herself collecting the rents and seeking an attorney to bring ejectment proceedings against the tenant in the rear house. These proceedings were instituted and Rita and the testatrix were present in court when possession of the rear premises was finally obtained after the expiration of about a year and a half. The tenant of the front house later moved to the rear house, thus making a vacancy for complainants.

Because of this delay the time set for complainants to take over the deed in their own name was extended to a year from the date after they had become settled in the front house. Meanwhile, within a month of the purchase, a fire had occurred in the rear house and there was much extra work in cleaning up, removing the debris and making the house habitable. Complainants continued to work at night and on Sunday in cleaning, scraping, painting, papering and making minor repairs in both houses. There was testimony that testatrix stated that the proceeds of the insurance from the fire were sufficient to make certain other repairs and special improvements in each house.

The testatrix made known to several persons that she had bought the houses for Rita and that she intended to have her lawyer make the necessary adjustment in the title. However, she suddenly was taken ill and died before she had completed the intended conveyance. While she was in the hospital she made a will, which was later probated, whereby she devised and bequeathed to the respondent daughter all the rest and residue of her property without any particular description.

Pursuant to the trial justice's findings a final decree was entered whereby "it is Ordered, Adjudged and Decreed as follows: That the respondent is hereby ordered to convey to the complainants the property in question as set forth

in the complainants' Bill of Complaint; and that the complainants shall assume the mortgage now held by the bank; and that the complainants shall pay to the respondent such part of the original down payment of One Thousand ($1,000.00) Dollars as has not already been liquidated by the rents; and that the complainants shall pay to the respondent whatever sums have been expended by the late Philomena Negus Fleming and not wholly repaid by rents received."

Respondent contends that the decree is against the law and the evidence; that there was no consideration for the alleged oral promise of the testatrix; that such promise was in violation of general laws 1938, chapter 481, §1; and that complainants were guilty of laches in failing to press their claim during the life of the testatrix.

In the circumstances complainants were not required to press their claim against the testatrix during her life in order to avoid the claim of laches. The reason is that the time finally fixed by the agreement for the conveyance of the property by testatrix to them, namely, a year after they had become established in the front house, had not expired. They had been occupying that house only a few months when testatrix died. We find no prejudice to the respondent on that ground and therefore there is no merit in her contention as to laches.

The real questions involved are whether there was clear and convincing evidence of an oral agreement upon consideration as alleged, and if so whether there was performance by complainants in reliance thereon and exclusively referable thereto sufficient to take the cause out of the statute of frauds. See *Baumgartner* v. *Seidel*, 75 R. I. 243.

It seems clear from the evidence as found by the trial justice that there was an understanding between the testatrix and complainants on or about November 1, 1945 as to this property; that the testatrix did not purchase it for

investment for herself or her daughter; and that she did purchase it for the complainants in order that they might become established in a home of their own.

On the question of consideration there was testimony that the testatrix had a special affection for Rita and also that she appreciated the services rendered by Rita's husband in connection with other property of the testatrix for which he neither asked nor received compensation. In addition thereto, the evidence disclosed the promise and performance of laborious work valued at $500 on the property here involved which was directly related to and performed exclusively in reliance upon the agreement of the testatrix.

That such was the agreement of the parties and that a conveyance was anticipated within a year, when testatrix would be wholly repaid, is supported by the evidence. Among other facts there is testimony that complainants were introduced promptly to the tenants as their new landlords before they ever moved into the front house; that they proceeded to collect the rents from both tenants and to pay them over to the testatrix for application on the bank mortgage and on the interest and principal of the so-called down payment mortgage; that the testatrix made statements to different persons before and after purchase in substance that she was buying or had bought the property for Rita and intended to convey it to her and her husband; that complainants performed much extra and overtime work not only upon the front house where they were to live but also on the house in the rear in which they did not intend to live; that a rent ceiling for the rear house had been filed with the office of price administration by the testatrix in the presence of Rita but no such ceiling had been filed to cover the front house; and that all this was done by the testatrix or with her knowledge and tacit approval while she was alive and in good health.

In addition it was specifically testified by Rita's husband that the labor performed on these houses, valued at $500,

would never have been performed except for and in reliance upon the understanding and agreement that testatrix would convey the property to them on the terms above set forth. This is further confirmed by testimony that she had stated in this connection that complainants could repair and improve the houses, repay her the money she had advanced, and if later *they* did not like the property for any reason it would be in a better condition for *them* to sell and enable them to buy a more desirable place.

It is clear from all the testimony of complainants that they so understood and treated the transaction because they referred to the down payment plus adjustments as the down payment "mortgage" which they owed to the testatrix as distinguished from the bank mortgage; and there is a record in evidence supporting the complainants' testimony of their payments to her of at least $27.82 on account of the interest and principal of the down payment mortgage. It is true that the deed was taken in the name of the testatrix, which might suggest a contrary inference. But there is also testimony that she was a good business-woman, and in the existing circumstances it is understandable why she may have preferred to take the title directly in accordance with the agreement and thereby have absolute control for her security until complainants had become established and had repaid the money she had advanced with interest.

In our opinion the trial justice did not misconceive the rule which requires clear and convincing evidence to establish such an oral agreement. See *Spencer* v. *Spencer,* 26 R. I. 237; *Lawton* v. *Thurston,* 46 R. I. 317; *Baumgartner* v. *Seidel, supra.* It is implicit in his decision that he applied such rule in weighing the evidence. From a reading of the transcript as a whole we cannot say that the trial justice was clearly wrong in his findings, in substance, that there was an oral agreement made upon good consideration which was performed by the complainants in direct reliance upon and exclusively referable to such agreement. On such

supported findings, therefore, the performance by complainants was sufficient in the circumstances to prevent the cause from being barred by the above-mentioned statute of frauds. In our opinion the decree is consistent with these findings.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Lawrence A. Flynn,* for complainants.

*William R. Goldberg,* for respondent.