**273 A.2d 311.**

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Trustee under Life Insurance Trust Agreement of Maurice A. Gagnon vs.* JEFFREY A. ISELE *et al.*

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Trustee u/w of Maurice A. Gagnon vs.* JEFFREY A. ISELE *et al.*

JANUARY 29, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. These causes were certified by the Superior Court pursuant to G. L. 1956, §9-24-28, for the construction of the will and an inter vivos deed of trust of Maurice A. Gagnon, deceased.[1] They are here for the second time. In the earlier proceeding we were asked to determine whether Jeffrey A. Isele, a child allegedly born of the decedent out of lawful wedlock, qualified either to participate in the gifts which the decedent made to his "children" in his will and in his inter vivos trust, or to take as a pretermitted child under §33-6-23. We refused to answer those questions pending a resolution of whether or not the decedent was in fact Jeffrey's putative father. Accordingly, we remanded to the Superior Court with direction to determine initially whether in the context of these causes, it or the Family Court had jurisdiction to decide the parenthood issue and whether the statute of limitations applicable in filiation proceedings controlled; and only then to hold an evidentiary hearing and to resolve the conflicts on the fatherhood question. *Industrial National Bank* v. *Isele*, 101 R. I. 734, 227 A.2d 203. After the Superior Court had complied with our mandate, the causes were ready for entry of final decrees, and were certified to this court for our determination.

We believe that the Superior Court correctly found that it had jurisdiction to decide whether Jeffrey was the decedent's illegitimate son, and that its consideration of the

---

[1] These causes were commenced prior to the adoption of the Superior Court's new rules of civil procedure and the nomenclature used and the procedures referred to throughout this opinion are to what then prevailed.

parenthood question was not barred by the statute of limitations. The jurisdictional problem arose because §14-1-5(C), as amended by P. L. 1961, chap. 73, sec. 14[2], as well as §8-10-3 as enacted by P. L. 1961, chap. 73, sec. 1, and §15-8-3 as amended by P. L. 1961, chap. 73, sec. 14, vested the Family Court with exclusive original jurisdiction to determine the paternity of any child allegedly born out of wedlock. That statutory grant of power, notwithstanding its apparent exclusivity, conferred upon the Family Court no broader authority in this area than had formerly been exercised by those courts to whose jurisdiction the Family Court succeeded upon its creation in 1961. *Petition of Loudin*, 101 R. I. 35, 37, 219 A.2d 915, 917; *Rogers* v. *Rogers*, 98 R. I. 263, 269, 201 A.2d 140, 144; *State* v. *Zittel*, 94 R. I. 325, 180 A.2d 455. Those courts passed upon paternity only in filiation proceedings, and it was never the practice in this state that the resolution of a paternity issue arising as an incident of litigation properly within the jurisdiction of another tribunal should be deferred by that tribunal pending a referral and a determination of that issue by the Family Court's predecessor. There was, therefore, no reason why the Superior Court should have yielded to the Family Court on the paternity issue in these causes. Whether or not the decedent was the putative father had to be resolved in order to effectuate the jurisdiction in the construction proceedings, and the issue of paternity was properly cognizable in those proceedings by the Superior Court, even though it would

---

[2]Section 14-1-5, as amended, provides that

"The court shall, as hereinafter set forth, have exclusive original jurisdiction in proceedings.

\* \* \*

"C. To determine the paternity of any child alleged to have been born out of wedlock and to provide for the support and disposition of such child in case such child or its mother has residence within the state."

have been beyond its jurisdiction to entertain a bastardy proceeding. In exercising that jurisdiction the Superior Court correctly decided the limitations period was that which controls in the construction of wills and trusts, rather than that which applies in filiation proceedings.

In addition to deciding the jurisdictional and the limitations questions, the trial justice also heard the conflicting evidence on the paternity issue. He found that the claim that Jeffrey was the decedent's illegitimate child had not been established by clear and convincing evidence. That finding is not challenged as lacking in evidentiary support, or as bottomed upon an oversight or a misconception of material evidence. Instead it is argued that the quantum of proof required to establish paternity in these causes should be the preponderance of evidence standard required in a bastardy proceeding. *Oliveira* v. *Santosuosso,* 102 R. I. 362, 230 A.2d 864. While it is true that the issue of paternity is just as critical in these causes as it would be in a bastardy proceeding, the similarity between the two situations stops there. In a bastardy proceeding the issue is whether a living defendant is the parent of a child born out of wedlock. That defendant is, of course, available to assist and to participate in the preparation and trial of the case. Here, however, the putative father— the real defendant on the paternity issue—predeceased the birth of his alleged illegitimate child and, unlike the living defendant in a bastardy proceeding, is unavailable to assist in this litigation. The protection of his interests was necessarily entrusted to a personal representative, who obviously was not as familiar as he would have been, if alive and able to testify, concerning the intimate details of his relationships with Jeffrey's mother.

The disadvantages and difficulties faced by that personal representative in defending against the claim of Jeffrey's mother that the decedent was the father of her

child are patently manifest. They require no enumeration. Certainly they are at least as burdensome as those customarily present when the existence or nonexistence of an ultimate fact rests entirely within the knowledge of two persons, one of whom is a living claimant and the other of whom is dead. In some situations of that kind this court has said that the contest is an unequal one, and that in order to prevent the estate of a deceased person from being unjustly mulcted in damages, the claim of the survivor shall be closely scrutinized, and the degree of proof required in order to support a decision in his favor clear and convincing.[3] Certainly no lesser quantum of proof should be demanded where the issue is paternity and the putative father, whose lips have been sealed by death, is unavailable to rebut the testimony of a mother concerning what took place behind closed doors.

We observed when these cases were first here that how the instruments should be construed would neither be in controversy nor justiciable unless it was first determined that Jeffrey was in fact the decedent's son. *Industrial National Bank* v. *Isele, supra,* at 737, 227 A.2d at 206. That determination has now been made and it has been found that Jeffrey is not the decedent's illegitimate posthumous child. We are not, therefore, called upon either

---

[3]The principle of close scrutiny and proof by clear and convincing evidence has been followed in cases where a survivor claims that a decedent, during his lifetime, agreed to pay him rent. *Armour* v. *Doonan,* 55 R. I. 243, 180 A. 333, or to make a will in his favor, *Tillinghast* v. *Harrop,* 63 R. I. 394, 9 A.2d 28; *Spencer* v. *Spencer,* 26 R. I. 237, 58 A. 766, or to pay him for services rendered over a long period of time, *McBride* v. *Young,* 73 R. I. 448, 57 A.2d 185, *Smith* v. *Frost,* 68 R. I. 241, 27 A.2d 299; *Paradise* v. *Rick,* 63 R. I. 207, 7 A.2d 713, or to convey or devise real estate to him, *Fagan* v. *Negus,* 77 R. I. 1, 72 A.2d 671; *Baumgartner* v. *Seidel,* 75 R. I. 243, 65 A.2d 697, or to reimburse him for money advanced or loaned, and to pay him for work and labor performed, *Gallagher* v. *Harlow,* 65 R. I. 267, 14 A.2d 663, or to reimburse him for board and care, *McAtee* v. *Jackson,* R. I., 157 A.305.

to construe the decedent's will or inter vivos trust, or to decide whether he may share in the decedent's estate as a pretermitted child.

In each case the parties may present to this court a form of judgment in accordance with this opinion to be entered in the Superior Court.

*Alan P. Cusick,* for plaintiff.

*Albert B. West, Edward P. Manning,* for Maurice A. Gagnon, Jr.;

*James Cardono, William J. Counihan, Jr.,* for Gail M. Isele, now Gail M. Leddy, and Jeffrey A. Isele;

*Harry Goldstein, Abraham Goldstein,* for Kenneth M. Gagnon; defendants.

*Edward Bromage, Jr.,* Guardian Ad Litem for persons unknown.