227 A.2d 203.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Trustee under Life Insurance Trust Agreement of* MAURICE A. GAGNON *vs.* JEFFREY A. ISELE *et al.*

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Trustee u/w of* MAURICE A. GAGNON *vs.* JEFFREY A. ISELE *et al.*

MARCH 10, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. These two bills in equity were brought in the superior court for the construction of a will and a deed of trust of Maurice A. Gagnon, hereinafter referred to as the decedent, and for a determination of the parenthood of Jeffrey A. Isele, a minor who was born following the decedent's death on February 2, 1959, and who claims that the decedent was his father. The decedent left as survivors a widow, Sophie T., and two children, Kenneth M. and Maurice A. Gagnon, Junior. Industrial National Bank of Rhode Island, trustee under both the will and the deed of trust, is the complainant and named as respondents are Jeffrey A. Isele, Gail M. Isele, as the mother and natural guardian of Jeffrey, Kenneth who is over twenty-one, Mau-

rice A., Junior, a minor,[1] and Sophie T., as the mother and natural guardian of Maurice A., Junior. It is represented that the named respondents are the only interested parties. Guardians were duly appointed to represent the interests of Jeffrey and Maurice, Junior, as well as the contingent interests of persons not in being and not ascertainable. The two bills were consolidated for hearing both below and here and were treated there and will be considered here as if this were but a single proceeding.

The trustee seeks the answers to the following questions: (1) Is Jeffrey an after-born child of the decedent; (2) Does he take a share of the decedent's personal and household effects bequeathed in paragraph numbered 2 of his will "to my surviving children in equal shares"; (3) Does he qualify as a beneficiary of proportionate shares of the residue of the estate under the will and of the principal of the life insurance trust which the decedent in paragraphs numbered 3a of the will and 6b of the deed of trust directed should be set aside in trust for each of his children who should be living at his death; and (4) Is he a pretermitted child within the purview of G. L. 1956, §33-6-23, and therefore entitled to a share of the decedent's estate equal to that which he would have taken had the decedent died intestate?

At the hearing in the superior court the trial justice admitted only enough evidence to establish the existence of a controversy on the paternity issue and reserved to the parties the right to present further evidence thereon at any subsequent hearing. Then, without first finding as a fact whether or not the decedent was Jeffrey's father, he found that the causes were ready for final judgment and, pursuant to §9-24-28, as amended, he certified them to this court for our determination.

Our brief summary of the travel of the causes in no way

---

[1]During the course of these proceedings Maurice A., Junior, attained his majority.

reflects the concern of the trial justice as to the proper procedure to be followed in the peculiar circumstances of this case and his doubts as to whether a certification prior to a factual determination of the question of Jeffrey's parenthood would be premature. The transcript makes it obvious that he felt bound by a statement of ours in *Horton* v. *Horton*, 46 R. I. 492, later approved in *Kershaw* v. *Kershaw*, 84 R. I. 429, which he construed as precluding him from conducting an evidentiary hearing or engaging in the fact-finding process. It is to this procedural difficulty that we now turn.

It is intertwined with the legal questions concerning Jeffrey's right as a child allegedly born of the decedent out of lawful wedlock to take as a pretermitted child under the statute and his eligibility to participate in the gifts made by the decedent in his will "to my surviving children" and in his trust deed "to the settlor's children who shall be living at his death * * *." Those, of course, are serious problems and the parties have a substantial stake in their solution. At this stage of the proceedings, however, the issues are neither in controversy in the legal sense nor are they justiciable, and indeed they will not become so unless and until the paternity question is resolved and even then only if it is found as a fact that the decedent was Jeffrey's father. It is only at that stage of the proceedings that Jeffrey can have any possible interest in the gifts made by the decedent to his "children."

A certification pending the resolution of the parenthood issue raises, therefore, the natural query of whether we are in effect being asked to answer legal questions in the abstract and to settle them for the future in what may well, depending on the ultimate resolution of the paternity question, be an advisory opinion. That, of course, is something this court will not do except upon the written request of the Governor or of either house of the general assembly,

in which instances the justices are required by the judicial article of the state constitution to give their opinions.

While the parties recognize that this procedural difficulty which arises because of the apparently premature certification could have been avoided had the issue of Jeffrey's paternity been resolved prior to the will and trust deed being sent here for construction, they argue that the trial justice had no authority to engage in fact finding and that it was incumbent upon him to certify the will and deed of trust to us for construction once the pleadings were closed and the case was ready for the taking of evidence. They rely, as did the trial justice, on *Horton* v. *Horton, supra.* In that case this court at page 495 said:

"* * * If the bill before us is one for the construction of a will it would be immaterial if said justice had made no findings of fact. The provisions of said §4968 [precursor to §9-24-28], pursuant to which the case was certified to this court, do not require the Superior Court to make findings of fact when the bill is one for the construction of or for instructions relative to a will or trust deed."

That statement read literally and in isolation has an apparent all-embracing comprehensiveness. It construes differently, however, when looked at contextually. Thus in *Horton* the only question considered was whether the testator's failure to provide in his will for his son was intentional and not occasioned by accident or mistake. On that question, following the principle then in effect,[2] the court drew its own inferences from the evidence which was unimpeached and uncontradicted, rather than in conflict.

---

[2]More recently we have held, however, that it is the business of the trier of the facts to draw inferences and that we will not intervene if his inference is reasonable. *Williams* v. *Rhode Island Hospital Trust Co.,* 88 R. I. 23; *Arden Engineering Co.* v. *E. Turgeon Construction Co.,* 97 R. I. 342, 197 A.2d 743. See, however, *Vance* v. *Rood,* 101 R. I. 608, 226 A.2d 143, where in a will construction case we drew the inferences where the evidence was undisputed and unimpeached.

And in *Kershaw* the court disregarded what evidence there was as being without relevance to the construction of the will and confined its consideration to what appeared within the four corners of that instrument.

However, the court in *Horton* relied on *Restino* v. *Tafuri*, 43 R. I. 156, as furnishing the guidelines for determining "when certain bills relative to wills and trust deeds shall be certified * * *." The premise for those guidelines was that a bill for construction or instructions would "rarely involve questions of fact and then of the most formal character * * * ." *Restino, supra*, at 159. If the function of such a bill is confined to that concept the *Horton* rule makes sense. That rule, however, neither contemplates a case where the evidence on an essential issue is in conflict nor does it foreclose the application of a different principle in such a case.

Finally in *Lindsley* v. *Lindsley*, 60 R. I. 85, 87, and in *Havens* v. *Havens*, 61 R. I. 356, 358, in what must be termed caveats, we expressly disavowed any intention either to consider or to decide whether findings of fact should accompany a certification in a case where the evidence is conflicting. The clear implication of these caveats was that application of the *Horton* rule should be limited, at least until the conflicting evidence issue arose and was decided, to those cases where the evidence was undisputed and unimpeached.

We conclude, therefore, that neither *Horton* nor *Kershaw* is authority for a principle that precludes a trial justice from engaging in fact finding where the evidence is conflicting rather than unimpeached and uncontradicted and when without a resolution of that conflict there will be neither a justiciable issue nor a legal question in controversy.

This brings us to a consideration of the meaning of §9-24-28, as amended. It directs the superior court to certify to this court for our determination "all civil actions for

the construction of any will or trust deed, or for instructions relative to any will or trust deed, whenever and as soon as any such case is *ready for* final judgment."[3] (italics ours) The meaning of that language is clear and unambiguous. *A cause is ready for final judgment* when nothing remains to be done except to enter that judgment. So construed there can be no post-certification proceedings relating to the will or deed of trust save for the entry of the final judgment following receipt from this court of its opinion construing the instrument certified. It logically follows that such evidentiary hearings and fact findings as may have been required in these proceedings to give legal vitality to the certification and to make it meaningful should necessarily have preceded the certification and were initially the responsibility of the superior court.

On remand the superior court coincident with any further proceedings should determine whether it has jurisdiction to adjudicate the parenthood of a child born out of wedlock, or whether jurisdiction of that question is vested exclusively in the family court. See §8-10-3, as amended, §15-8-1, and *Surber* v. *Pearce*, 97 R. I. 40, 195 A.2d 541. If it determines that it has such jurisdiction, it should then decide whether to apply to the legitimacy question the three-year statute of limitations established in §15-8-18 for filiation proceedings, or the general rule which, in the absence of a statute to the contrary, abates a bastardy action upon the death of the putative father. *Schumm* v. *Berry*, 100 Cal. App. 2d 407; *Toms* v. *Lohrentz*, 37 Ill. App. 2d 414.

The causes are remanded to the superior court for further proceedings in accordance with this opinion.

---

[3]When *Horton* and *Kershaw*, both *supra*, were decided §9-24-28 in pertinent part was substantially identical excepting that it then provided that certification should be made when the cause is ready for "final decree" rather than for "final judgment." The amendment, P. L. 1965, chap. 55, sec. 41, became necessary with the adoption of the new Rules of Civil Procedure in the superior court.

*Alan P. Cusick,* Providence, for complainant.

*Edmund A. Baldi,* North Providence, for respondent Jeffrey A. Isele.

*Abraham Goldstein,* Providence, for respondent Kenneth M. Gagnon.

*James Cardono,* Pawtucket, for respondent Gail M. Isele, now Gail M. Leddy.

*Albert B. West, Edward P. Manning, Joseph Janas, John Janas,* Providence, for respondent Maurice A. Gagnon, Jr.

*Edward Bromage, Jr.,* Providence, Guardian Ad Litem for Persons Unascertained and Not in Being.