288 A.2d 250.
ERNEST H. DAVISON, *Trustee vs.*
ROGER J. DESLAURIERS *et al.*

MARCH 7, 1972.

PRESENT: Roberts, C. J., Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This civil action was brought in the Superior Court for the construction of and instructions in relation

to the will of Wilford E. Lamarine, late of the city of Central Falls, who died testate on June 28, 1950, leaving a wife, Permelia, but no issue, him surviving.

The complainant is the sole surviving trustee under Wilford's will, and he has assured us that all of the persons now in being who are either the testator's heirs at law or who might otherwise have any interest under Clause Fourth of his will have been joined as respondents. All the adult respondents who are joined, excepting only Eugene Lamarine, filed answers in which they admitted the allegations contained in the complaint and joined in the demands for judgment. Eugene Lamarine, in a separate answer, admitted some of complainant's allegations, and neither admitted nor denied the remainder, but left him to his proof. Of those adults named as respondents only Eugene filed a brief and argued in this court. A guardian ad litem represents the interests of the minor respondents and of persons not in being and not ascertainable. It is represented by affidavit that no person having an interest in this proceeding is in the military service. When the cause was ready for final judgment, it was certified to this court pursuant to the provisions of G. L. 1956 (1969 Reenactment) §9-24-28.

The particular provisions of the will that prompted complainant's inquiries are found in Clause Fourth. It establishes a residuary trust which, in substance and insofar as here pertinent, directs the trustee or trustees to pay $12,000 a year to the testator's widow, Permelia, during her lifetime, and following her death:

(1) To transfer to each of the testator's nephews, if then living, namely, Roger J. Deslauriers, Norman W. Lamarine, Eugene E. Lamarine and Raoul Normandin, hereinafter collectively referred to as "the nephews," "as an outright gift, absolutely and forever," 100 shares of the capital stock of the Bonin Spinning Company;

(2) To pay the income of the trust annually in stipulated proportions to certain designated persons, including the nephews, and to pay the nephews their shares in stock of the Bonin Spinning Company; and

(3) To dissolve the trust estate and to distribute the trust assets equally among the testator's then living heirs at law either ten years after Permelia's death, or at such earlier time subsequent to her death as the trustee may deem advisable, if the nephews by then have between them acquired a controlling interest in the Bonin Spinning Company.

The widow Permelia passed away on March 26, 1970. Bonin Spinning Company was not then in existence, its charter having been forfeited and its assets having been distributed in liquidation to its shareholders in 1965. Now, less than a year following Permelia's demise, some of the testator's heirs at law have requested complainant, as the sole surviving trustee, to terminate the trust as expeditiously as possible. While he is agreeable and willing to comply with their request, he is doubtful of his authority to distribute at this time, and, assuming it can be done, he is uncertain as to the identity of the distributees and the amounts of their distributive shares. Accordingly, he has posed for our consideration the following questions:

"I. May the Trustee under Paragraph Fourth of the Will of Wilford E. Lamarine now terminate the Trust therein created if he deems it advisable so to do?

"II. In the event that the Trust is terminated, as of what date or dates shall the beneficiaries eligible to share be determined?

"III. Are such beneficiaries' interests vested?

"IV. Who should take a beneficiary's share of undistributed trust assets if such beneficiary should die prior to complete distribution?

"V. Should the persons who are Testator's heirs at law at the time of the dissolution and/or distribution take per capita or per stirpes?

"VI. What, if any, is the distinction between the terms 'dissolve said trust estate' and 'distribute the property remaining therein'?

"VII. Should the Trustee distribute income?

"VIII. If so, to whom and in what proportions?

"IX. In the event of the death, removal or resignation of Ernest H. Davison, should Industrial National Bank of Rhode Island be appointed as Trustee in his place and stead?"

I

During argument in this court it became apparent that the parties were not at odds on all the issues raised by the questions, and at the close of oral argument we requested them to advise us to what extent they could agree on the issues. They have since stipulated that the remainder interests under the residuary clause are contingent rather than vested, and have agreed on who will take and in what proportions should the residuary trust be presently terminated.[1] These agreements are dispositive of questions numbered III and V and they therefore require no response.

In addition, we decline to answer questions numbered IV and IX, but for an entirely different reason. They relate to issues which may never arise, and if they do arise, will

---

[1]With respect to who shall take, the stipulation provides:

"With respect to item 2. above, counsel are in agreement that those persons listed in Appendix F attached to Plaintiff's brief; that is Roger J. Deslauriers, testator's nephew, Marguerite Archambault, testator's niece, Rose Blanche Deslauriers, testator's niece, Michael Reed, son of testator's niece, Leona Normandin, testator's niece, Norman W. Lamarine, testator's nephew and Eugene E. Lamarine, testator's nephew would be the present persons to share in the trust corpus if the trustee were to terminate the trust at this time. Each of the named persons would have a one-seventh interest."

do so only at some time in the indeterminate future. That kind of inquiry does not fall within the scope of matters properly cognizable under the statute pursuant to which wills and trust deeds are certified to this court for instructions and construction and do not, therefore, require responses. *Bank of Delaware* v. *Industrial National Bank,* 105 R. I. 751, 752-53, 255 A.2d 150, 150-51 (1969); *Industrial National Bank* v. *Isele,* 101 R. I. 734, 227 A.2d 203 (1967); *Alumnae Ass'n of Newport Hospital School of Nursing* v. *Nugent,* 101 R. I. 26, 219 A.2d 763 (1966).

For the same reasons we do not answer questions numbered II and VI. There the trustee, anticipating an affirmative answer to the first question, seeks guidance on what event or events will constitute a termination of the trust and on what date the remainder interests under the trust will vest. What makes the resolution of the trustee's doubts in these respects unnecessary is that the parties have stipulated who will take and in what proportions "if the trustee were to terminate the trust at this time." That stipulation, as set forth in footnote one, presupposes that none of the persons there named will predecease either the trustee's election to dissolve or the date the shares in remainder are distributed. That being so, the necessity for responding to those questions will arise only if one or more of the designated takers should die either before the trustee exercises his discretion to dissolve or subsequent to its exercise, but prior to the actual distribution. Viewed in this light the questions asked are not in controversy in a legal sense and to settle them now for the future may, depending upon who of the persons named in the stipulation lives and who dies, be nothing more than an advisory opinion. That kind of an opinion we do not give except when constitutionally mandated. *R. I. Hospital Trust Co.* v. *Perkins,* 105 R. I. 392, 396, 252 A.2d 359, 361 (1969); *Industrial National Bank* v. *Isele, supra.*

## II

We turn now to the questions that merit decision. The first and certainly the root question is whether the surviving trustee may now terminate the trust even though less than ten years have elapsed since Permelia's demise. Whether that is possible depends upon how Clause Fourth (i) of the will is read.[2] That clause, as we have already observed, permits the trustee, if he deems it advisable, to terminate the trust sooner than ten years after Permelia's death, provided the nephews have by then between them acquired a controlling interest in the Bonin Spinning Company.

Although the trustee now deems it advisable to terminate the trust, the nephews have not gained control of the Bonin Spinning Company. That possibility vanished almost five years prior to Permelia's death when Bonin Spinning Company's charter was forfeited and its assets distributed in liquidation.

The question narrows, then, to whether the corporate demise of the Bonin Spinning Company and the resulting impossibility of a meaningful distribution of its stock to the testator's nephews will excuse the performance of that condition precedent so as to permit a present termination of the trust. At an earlier time our answer might have hinged upon whether the condition was precedent or sub-

---

[2]Clause Fourth (i) provides:

"At any time prior to the lapse of ten (10) years from the death of my said wife, Permelia Lamarine, if my nephews, Roger J. Deslauriers, Norman W. Lamarine, Eugene E. Lamarine and Raoul Normandin, have between them acquired a majority of the stock of the Bonin Spinning Company and my said trustee or trustees deem it advisable to dissolve said trust estate and distribute the property remaining therein, I hereby authorize them so to do. In any event, when a period of ten (10) years from the date of the death of my wife, Permelia Lamarine, has elapsed I direct my said trustee or trustees to dissolve said trust estate and distribute all the property remaining therein together with any accumulations of income, as hereinafter provided."

sequent, and whether the gift was a devise or a bequest. Simes, *The Effect of Impossibility Upon Conditions in Wills,* 34 Mich. L. Rev. 909, 910 (1936). *See* Annot. 39 A.L.R.2d 522, 525 (1955). More recently, however, the tendency has been to ignore such formal distinctions. Today, "[w]here impossibility is offered as an excuse for nonperformance, the construction process required under the [Restatement] rule is a judicial inquiry, not as to what the conveyor actually intended, but as to what his intent would have been had he known of or anticipated the impossibility at the time he imposed the restraint * * *." 4 Restatement of Property §438, comment *c* at 2551 (1944). Professor Scott states that in these circumstances our interest is in what the testator "* * * intended or probably would have intended if he had foreseen the failure of the condition." 1 Scott, *Trusts* §65A at 645 (3d ed. 1967).

In a case factually dissimilar, but presenting the same kind of construction problem as does this case, we described the process of discerning an otherwise obscure intention by the application of constructional aids as involving "* * * within the context of the testamentary language and the circumstances attendant upon the instrument's formulation, an ascertainment of what would have been the probable intention of the average testator faced with the particular problem. 2 Scott, Trusts (2d ed.) §164.1, p. 1160; 5 American Law of Property §22.3, p. 248." *Manufacturers National Bank* v. *McCoy,* 100 R. I. 154, 158-59, 212 A.2d 53, 55 (1965). *Accord, Alumnae Ass'n of Newport Hospital School of Nursing* v. *DeSimone,* 106 R. I. 196, 198, 258 A.2d 80, 82 (1969); *Industrial National Bank* v. *Barrett,* 101 R. I. 89, 98, 220 A.2d 517, 523 (1966).

It is with these general principles in mind that we seek to ascertain what this testator would have done had he foreseen the possibility that the Bonin Spinning Company's corporate existence would come to an untimely end during

his wife's lifetime and thereby make it impossible for his nephews ever to acquire control of that company. A reading of his entire will leaves no doubt as to his estate plan. In substance, it was primarily to provide initially for his wife during her lifetime, and after her death to benefit his heirs at law, among whom were his nephews. While his will does not make his wife's demise the event which triggers the termination of the trust, it postpones it beyond the happening of that event, not because the testator wanted to delay distribution of the trust estate to his heirs at law, but solely because, as he says in his will, he desired to give his nephews "* * * an opportunity to acquire a majority of the Bonin Spinning Company stock by taking their shares of the income from said trust estate in stock of the Bonin Spinning Company." For that limited purpose he was willing to postpone termination of the trust and to defer distribution of the trust corpus.

Had the testator realized that subsequent events might make it impossible for his nephews ever to acquire a controlling interest in the Bonin Spinning Company, would he have been likely to postpone distribution of the trust assets until his wife had been dead for ten years? We think not. While he was willing to delay distribution of the corpus to them, that willingness was expressly conditioned upon a transfer of control to his nephews. Once that became impossible, its accomplishment as a precedent to the trustee's right to terminate is excused. The trustee may now therefore exercise his discretion to bring the trust to an end even though ten years have not elapsed since the widow's death. See 4 Restatement of Property §438, comment e at 2552-53 (1944).

The guardian who opposes present dissolution of the trust and distribution of its assets argues that Perry v. Brown, 34 R. I. 203, 83 A. 8 (1912) militates against our conclusion. In that case a wife left a legacy to a servant

on condition that he care for her ailing husband when he left the hospital and returned to his home. After the wife's death it became clear that the husband would "never leave the [h]ospital" and the court found that the gift to the servant was conditioned upon his caring for the husband and that nonperformance, even though attributable to causes beyond the servant's control, prevented his legacy from vesting.

*Perry's* underlying rationale was that the testatrix provided as she did in order to insure care for her husband rather than to confer a gratuity upon the servant. In those circumstances the performance of the condition by the legatee was not excused even though subsequent events not anticipated when the will was being drawn made performance impossible.

We find nothing in the court's reasoning in *Perry* v. *Brown, supra,* or in its result which conflicts with what we say here. We are, of course, aware of *Perry's* gratuitous observation that "[t]he law is well settled that where a gift by will is made on an express condition precedent, which becomes impossible of performance (and the existence of impossibility is unknown to the testator), the gift cannot vest." *Id.* at 230, 83 A. at 18. That observation, however, was not so much a statement of a fixed rule of construction as it was an expression of the court's belief that in the peculiar circumstances of the case the testatrix could not have intended to excuse performance. *See* 4 Restatement of Property §438, comment *g* at 2554-55 (1944).

Our own examination into the circumstances of this case convinces us that this testator, had he anticipated the dissolution of Bonin Spinning Company, would at least have permitted, and might even have directed, the trustee to terminate the trust earlier than ten years subsequent to Permelia's death.

Now that we have told the trustee that he has the right to terminate the trust his next problem is *how* he may exercise that right. Examination of the will is of no help since it fails to prescribe any procedure for termination. Absent such a prescription, the general rule is that a trustee may use any reasonable method, such as, for example, giving written notice to the beneficiaries. Bogert, *Trusts & Trustees* §1001 at 493-94 (2d ed. 1962).

## III

The seventh question, in the form argued, asks whether the income payments called for by Clause Fourth (f) of the will should be paid from the date of Permelia's death and until the residuary estate is dissolved and distributed. That clause, a copy of which is set out in full in the appendix, directs the payment of income to certain named beneficiaries, but only (1) after Permelia's death, (2) upon completion of the transfer of the Bonin Spinning Company's stock to the testator's nephews and (3) following payment of maintenance to the testator's sister, Albina Clabburn, during her lifetime. Both Permelia and Albina are now deceased, the latter having predeceased the former, and those conditions have been satisfied. Not so, however, with the transfer of the Bonin Spinning Company stock for, as earlier observed, the dissolution of the Bonin Spinning Company has made that transfer impossible.

In responding to the first question, we explained why in our judgment the trustee has a present right to terminate the trust even though acquisition by the testator's nephews of a controlling interest in the Bonin Spinning Company has become impossible. The same reasons apply here. Accordingly, we now decide that performance of the identical condition precedent is excused, and that the trustee, pending dissolution of the trust and distribution of its assets, may pay the appropriate amounts of trust income to the persons named in Clause Fourth (f) of the will.

## IV

The next question, numbered VIII, follows logically from the one just answered. It asks us to instruct with respect to who shall receive, and in what proportions, the trust income payable under Clause Fourth (f) of the will. The parties agree that the question involves three separate and distinct problems, and it is to them that we now direct our attention.

The first of those problems concerns the income payable to Eva Cormier and Raoul Normandin, both of whom predeceased the testator's wife, Permelia. It arises with respect to Eva because the second paragraph of Clause Fourth (f) provides that if Eva predeceases Permelia, the trustee should "* * * pay the annual income said Eva Cormier would have received, if living, to the surviving beneficiaries under this trust, in equal shares"; and with respect to Raoul, because the third paragraph of Clause Fourth (f) provides that if Raoul predeceases Permelia, the trustee should "* * * pay the annual income from said trust estate said deceased nephew * * * would have received, if living, to the children of said deceased nephew * * * who shall then be living. If there are no such children, then said income is to be paid to the surviving beneficiaries under this trust in equal shares." No children survived Raoul, and, therefore, the income distribution both he and Eva would have received under Clause Fourth (f) if they had survived is to be paid instead "to the surviving beneficiaries under this trust in equal shares."

What causes the difficulty is that the phrase "surviving beneficiaries" as used in each of the quoted portions of Clause Fourth (f) stands alone, has no clear and certain meaning and is nowhere defined in the will. In this situation our initial obligation is to read the will in its entirety and in the light of the circumstances of its formulation in an attempt to discover the testator's dispositive intent.

If we can thus ascertain that intent, we will give it effect so long as it is not contrary to law. *Industrial National Bank* v. *Budlong,* 106 R. I. 780, 790, 264 A.2d 18, 23 (1970); *Egavian* v. *Egavian,* 102 R. I. 740, 743, 232 A.2d 789, 791 (1967); *Manufacturers National Bank* v. *McCoy,* 100 R. I. 154, 158-59, 212 A.2d 53, 55 (1965).

Both the trustee and Eugene agree on this procedure as the first step for construing testamentary language of doubtful meaning, but each in his own search for the testator's dispositive intent with respect to the use of the language "the surviving beneficiaries under this trust" arrives at a different conclusion. Thus, the trustee argues that the only possible reference elsewhere in the will to that language is found in Clause Fourth (j) where the testator provides that the trustee, upon dissolution of the trust, shall "* * * distribute all property then in said trust estate equally among such of my heirs at law as shall be living at the time such trust estate is dissolved and distributed." He then equates the phrases "surviving beneficiaries" and "heirs at law." With that equation as a starting point he argues that the "heirs at law" cannot be determined until the trust terminates, that it necessarily follows that the "surviving beneficiaries" likewise are not determinable until the termination date and that until that date arrives the income should be accumulated and added to the trust corpus.

We are unable to agree with the trustee. If the testator's dispositive intent had been as the trustee contends it was, it would be expected that he would, in substance, have directed his trustees in the second and third paragraphs of Clause Fourth (f) to accumulate the income which otherwise would have been payable to Eva and to Raoul or his children, if living, and upon termination of the trust to divide the accumulations equally among such of his heirs at law as were then living. He was familiar with that kind of

language; he used it in Clause Fourth (j) where he disposed of the trust corpus, and again in Clause Fourth (i) where he displayed an awareness of how to dispose of "accumulations of income." His deliberate rejection of that kind of wording and his selection in its stead of verbiage which is entirely different both textually and conceptually cannot be charged to happenstance. Indeed, it is far more likely that he intended that any gift of income to a named beneficiary which failed because of that beneficiary's death should be paid instead to such of the other beneficiaries named in Clause Fourth (f) as were living, in equal shares.

The other two problems raised by the eighth question relate to what should be done (1) with the trust income designated for the children of Uellia Deslauriers and of Clara Normandin if those children should die before termination of the trust, and (2) with the surplus income, if any, above the dollar amounts specified in the first paragraph of Clause Fourth (f). The trustee quite properly refers to these problems as "potential" rather than "real," and it is because they are "potential" rather than "real," and because they postulate eventualities which may never occur that we refuse to answer them at this time. *Bank of Delaware* v. *Industrial National Bank,* 105 R. I. 751, 255 A.2d 150 (1969); *Industrial National Bank* v. *Isele,* 101 R. I. 734, 227 A.2d 203 (1967); and *Alumnae Ass'n of Newport Hospital School of Nursing* v. *Nugent,* 101 R. I. 26, 219 A.2d 763 (1966).

The parties may present to this court for approval a form of judgment, in accordance with this opinion, for entry in the Superior Court.

PAOLINO, J., did not participate.

### APPENDIX

### CLAUSE FOURTH (f)

After the decease of my wife, Permelia Lamarine, and the transfer of the Bonin Spinning Company stock herein-

before provided for has been made to Roger J. Deslauriers, Norman W. Lamarine, Eugene E. Lamarine and Raoul Normandin and the payment for the maintenance of my sister, Albina Clabburn, if necessary, is made, I authorize and direct my said trustee or trustees to pay annually one-eighth (1/8th) of the income from said trust estate to the children of my deceased sister, Uellia Deslauriers, who may be then living, to be divided among them, share and share alike; one-eighth (1/8th) of the income from the said trust estate to the children of my deceased sister, Clara Normandin, who may be then living, to be divided among them, share and share alike; one-eighth (1/8th) of the income from said trust estate to my sister, Eva Cormier, if she is then living; one-eighth (1/8th) of the income from said trust estate to my nephew, Raoul Normandin; and the balance of said income from said trust estate to be divided among my nephews, Roger J. Deslauriers, Norman W. Lamarine and Eugene E. Lamarine, if they are then living, share and share alike; Provided, However, that not more than the sum of Four Thousand ($4,000) Dollars each out of said income is to be paid in any one year to the children of my deceased sisters, Uellia Deslauriers or Clara Normandin, not more than the sum of Four Thousand ($4,000) Dollars to my sister, Eva Cormier, if she is still living, not more than the sum of Four Thousand ($4,000) Dollars to my nephew, Raoul Normandin, if he is still living, and not more than the sum of Two Thousand ($2,000) Dollars is to be paid in any one year to each of my nephews, Roger J. Deslauriers, Norman W. Lamarine and Eugene E. Lamarine.

If my sister, Eva Cormier, dies prior to the death of my wife, or at any time prior to the dissolution or distribution of this trust estate, I direct my said trustee or trustees to pay the annual income said Eva Cormier would have re-

ceived, if living, to the surviving beneficiaries under this trust, in equal shares.

If any of my said nephews, Roger J. Deslauriers, Norman W. Lamarine, Eugene E. Lamarine or Raoul Normandin, dies prior to the death of my wife, or at any time prior to the dissolution or distribution of this trust estate, I direct my said trustee or trustees to pay the annual income from said trust estate said deceased nephew or nephews would have received, if living, to the children of said deceased nephew or nephews who shall then be living. If there are no such children, then said income is to be paid to the surviving beneficiaries under this trust in equal shares.