290 A.2d 903.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Trustee under Life Insurance Trust Agreement of Maurice A. Gagnon vs.* JEFFREY A. ISELE *et al.*

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Trustee u/w of Maurice A. Gagnon vs.* JEFFREY A. ISELE *et al.*

MAY 23, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

158

POWERS, J.   These are cross-appeals from a Superior Court judgment entered in accordance with the awarding of certain fees for services of attorneys and guardians ad litem, made on the authority of G. L. 1956 (1969 Reenactment) §9-14-25.

The parties have been before this court on two previous occasions and our decisions with regard to the disposition thereof are reported as hereinafter cited.

This litigation was commenced by the Industrial National Bank of Rhode Island, hereinafter called Industrial, whereby Industrial, as trustee of a deed of *inter vivos* trust and a trust under the will of Maurice A. Gagnon sought construction of said instruments pursuant to the provisions of §9-24-28, as amended,[1] as well as for a determination of the parenthood of the named defendant, Jeffrey A. Isele.

At the time of his death, Gagnon, hereinafter called decedent, was survived by his widow, Sophie, and two children born of that marriage. By the terms of both instruments sought to be construed, decedent had made provisions for his "children" who survived him. To the knowledge of Industrial and the widow, decedent left only the two children heretofore mentioned.

However, some time after decedent's death, Industrial was advised by counsel for Gail M. Isele that she was the mother of a minor son, Jeffrey A. Isele, of whom she claimed decedent was the putative father. It appears that there was an exchange of communications between counsel for Gail and Industrial which communications were concerned with Gail's claim that decedent was the putative father of Jeffrey. Litigation to establish this claim was

---

[1]The substance of this section was reenacted by P. L. 1965, ch. 55, sec. 41, and is now cited as G. L. 1956 (1969 Reenactment) §9-24-28.

However the substantive provisions have remained the same throughout and are as follows:

"The superior court shall certify to the supreme court for its determination all civil actions for the construction of any will or trust deed, or for instructions relative to any will or trust deed, whenever and as soon as any such cause is ready for final judgment. The supreme court shall thereupon hear and determine the cause so certified, and like proceedings shall be had therein, so far as the same are applicable thereto, as if said cause were brought before the supreme court on appeal."

never initiated by Gail. Industrial, however, with an obligation to make distributions but uncertain as to potential future developments, initiated proceedings as aforesaid. Named as defendants were decedent's known surviving family as well as Jeffrey and Gail.

When the matter came on for hearing in the Superior Court, a justice thereof appointed a guardian ad litem to represent unascertained persons or persons not in being, and Edmund A. Baldi, Esquire, guardian ad litem for Jeffrey A. Isele. The Superior Court justice received only such evidence as was necessary to establish that a controversy existed as to the Iseles' assertion of Jeffrey's right to be included as one of the decedent's surviving children under the will and *inter vivos* trust, and to share in decedent's estate as a pretermitted child. So doing, but reserving to the parties the right to present further evidence on said controversy at any subsequent hearing, the Superior Court justice, acting on the assumption that the cause was ready for judgment, certified to this court certain questions bearing on Jeffrey's right to share in decedent's estate, if the latter were determined to be Jeffrey's putative father.[2] His reason for the procedure followed was uncertainty resulting from prior decisions of this court.

In any event, when the cause as thus certified was reviewed by us, we considered and discussed at length the Superior Court justice's procedural dilemma. First resolving that question, we then held, in effect, that the Superior Court justice's jurisdiction to certify under §9-24-28 was contingent upon whether Jeffrey was in fact decedent's natural child since, if such were not the case, the instruments to be construed would neither be in controversy nor justiciable.

---

[2]The specific questions certified are set forth in *Industrial National Bank of Rhode Island* v. *Isele,* 101 R. I. 734, 227 A.2d 203 (1967) and need not be repeated here.

In other words, certification for construction of the instruments was not and would not be in order for consideration by the Superior Court unless and until the parenthood controversy was decided in favor of Jeffrey. Such a decision would, of course, require an evidentiary hearing but this gave rise to the question of whether jurisdiction to decide that issue was in the Superior Court or in the Family Court.

Consequently, we remanded the cause to the Superior Court with directions to that court to consider first the question of jurisdiction. Moreover, we pointed out that the Superior Court would conduct an evidentiary hearing on the issue of parenthood only after a determination that jurisdiction to do so was vested in the Superior rather than the Family Court. *Industrial National Bank of Rhode Island v. Isele,* 101 R. I. 734, 227 A.2d 203 (1967).

Before turning to a consideration of subsequent proceedings, it should be noted that at some point in the litigation Edmund A. Baldi was succeeded as guardian ad litem for Jeffrey by James Cardono, who in turn was succeeded by William J. Counihan as attorney for said guardian ad litem.

After the cause had been remanded as aforesaid, a justice of that court considered the question of jurisdiction as directed, and concluded that he had jurisdiction to conduct the evidentiary hearing on the issue of parenthood.

On consideration of the evidence adduced at such hearing, and applying the clear and convincing standard of proof to the evidence as he viewed it, the Superior Court justice found that Jeffrey had not established that he was the natural child of decedent. With this question decided,

he again certified the cause to this court as one being ready for entry of final judgment.[3]

On review we approved the Superior Court justice's holding that jurisdiction was in the Superior Court, *Industrial National Bank of Rhode Island* v. *Isele,* 108 R. I. 144, 273 A.2d 311 (1971), and turn to a consideration of Jeffrey's contention that the decision of the Superior Court justice on the issue of parenthood was clearly wrong, in that he had applied the wrong standard of proof.

We rejected this contention holding as correct the Superior Court justice's application of the clear and convincing evidence standard, rather than the fair preponderance quantum applicable to bastardy proceedings, as argued on behalf of the Iseles. Having made this determination, we directed the parties to submit to this court for approval, a form of judgment to be entered in the Superior Court. Pursuant to this mandate there was submitted to and approved by us a judgment for entry in the Superior Court. It provided in pertinent part as follows:

"1. The claimant Jeffrey A. Isele is found not to be the child of Maurice A. Gagnon, deceased, the settlor of the life insurance trust agreement dated May 1, 1956.

"2. The findings of fact established by this judgment make any further proceedings for the construction and interpretation of said trust unnecessary, so therefore after the determination of proper attorneys' fees the within proceedings shall be deemed terminated."

With the entry of this judgment in the Superior Court, proceedings were commenced in that court looking to a

---

[3]Parenthetically, it should be noted that when the merits of the parenthood issue were decided adversely to Jeffrey, there were no questions to certify and a judgment to this effect should have been entered. The cause would have then come to this court by way of an appeal from that judgment. However, we elected sua sponte to treat this second certification as an appeal.

determination and awarding of fees, pursuant to the provisions of §9-14-25.[4]

As a result of those proceedings, the Superior Court justice awarded fees not involved in the instant appeals. However, in addition to the uncontested awards, he also awarded fees to the successive guardians ad litem for Jeffrey and to their attorneys. He refused, however, to allow counsel fees for services rendered to Jeffrey and Gail prior to the commencement of the litigation and for representing Gail as a named defendant.

From the judgment accordingly entered, Messrs. Baldi and Cardono appealed to this court contending that the Superior Court justice erred in refusing to allow fees to them as aforesaid, and Industrial appealed from the awards to Messrs. Baldi and Cardono as guardians ad litem of Jeffrey and from awards to Messrs. Baldi, Cardono and Counihan for services as attorneys to Jeffrey's guardian ad litem.

We find no merit in either appeal and neither requires protracted discussion. With regard to the awards for guardians ad litem for Jeffrey and attorneys for such guardians, the Superior Court justice pointed out that the asserted claim of Jeffrey placed Industrial in an impossible position, a position which, until resolved, constituted a cloud on the beneficiary's title to the decedent's trusts. So viewed, the services of the guardians ad litem and their attorneys were of assistance to the court in bringing about a judicial

---

[4]"In any civil action or other proceeding, wherein construction of a will or trust deed or any part thereof is asked, there may be allowed to each of the parties defendant brought in by such action or other proceeding, applying therefor, such reasonable sum for expenses and on account of counsel fees as the court in which such case is pending shall deem proper; such allowance shall be taxed as costs in the cause and be paid out of the estate or fund in the hands of the complainant concerning which estate or fund the construction is asked."

determination of an issue for which there was no other solution.

While it is true that Jeffrey's claim to being the natural child of the decedent was disallowed, the Superior Court justice was careful to observe that it was not totally spurious, in that Jeffrey failed to establish his claim by clear and convincing evidence. Looked at in this light, Industrial was warranted in seeking judicial resolvement of Jeffrey's claim, and the reasonable expenses in connection with the litigation ought to have been within its contemplation.

Section 9-14-25, on the authority of which the Superior Court made the awards, expressly provides for the payment out of the funds concerning which construction is asked, such expenses including counsel fees as the court deems proper. As heretofore noted, the Superior Court justice, in making the awards challenged by Industrial, stated the reasons why he believed such awards to be proper and in our judgment, his reasoning is not to be faulted.

Turning to the appeal of Messrs. Baldi and Cardono for disallowed counsel fees on behalf of Gail and Jeffrey, we need only repeat that such awards are a matter of discretion which will not be disturbed in the absence of abuse. In denying the fees not allowed, the Superior Court justice correctly observed that it was only in connection with the determination of Jeffrey's claim that fees should be allowed.

Apart from the merits of the appeal, the guardians ad litem for Jeffrey and their attorneys argue that they are entitled to further compensation to be awarded by this court for their efforts in connection with Industrial's appeal. Rejecting such claim, we need only note that they performed this service in defense of their interest which, while proper, nevertheless, is of no benefit to the trust.

Finally, they further contend, however, that they are entitled to interest on the judgment in their favor from

the date of its entry to the date that it is discharged, citing *Colavecchio* v. *Houle,* 106 R. I. 529, 261 A.2d 649 (1970), *Everett* v. *Cutler Mills,* 52 R. I. 330, 160 A. 924 (1932). Both cases are inapposite however to their claim for interest on the judgment from which Industrial appealed.

Industrial, however, does not dispute that the judgment in question should bear interest to the date of its discharge.

Section 9-21-8 provides "Every judgment for money shall draw interest to the time of its discharge."

From our independent research of cases annotated under the aforequoted section it does not appear that said section has ever been made applicable to judgments entered pursuant to §9-14-25 or its precursors. However, there is cited in connection with §9-21-8, *Mowry* v. *Peck,* 2 R. I. 60 (1851). There it was held that the report of commissioners upon the estate of a deceased insolvent, is in the nature of a judgment, ascertaining the sums due from the deceased at his death, and, from and after that time, interest is allowable on such sums as upon a judgment.

On reflection therefore, we perceive no sound reason why the sums entered as a judgment for the guardians ad litem and their attorneys should not bear interest from the date said judgment was entered to the date of its discharge, particularly since Industrial claimed the subject appeal on April 13, 1971, and the cross-appeal was filed May 7, 1971. In such circumstances, it cannot be argued that the appellees in Industrial's appeal are seeking interest on a judgment which, except for their own appeal, might have been earlier discharged.

Both appeals are denied and dismissed and the judgment appealed from is affirmed.

*Alan P. Cusick,* for plaintiff.

*James Cardono, Edmund A. Baldi, William J. Counihan, Jr.,* for defendants.