**RHODE ISLAND INSURERS' INSOLVENCY FUND**

v.

**LEVITON MANUFACTURING COMPANY, INC. et al.**

No. 96–417–Appeal.

Supreme Court of Rhode Island.

July 24, 1998.

Joseph C. Tanski, Boston, MA, Paul S. Veidenheimer, James V. Santaniello, for Plaintiff.

Melissa M. Horne, Allen P. Rubine, Deming E. Sherman, Kimberly Ann O'Connell; Rebecca Tedford Partington, Providence, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This is an appeal from the entry of partial summary judgment in favor of the plaintiff, Rhode Island Insurers' Insolvency Fund (the fund). The defendants, Leviton Manufacturing Company, Inc. (Leviton), and its wholly owned subsidiary corporation, American Insulated Wire Corporation (AIW), were insured for workers' compensation liability by American Mutual Life Insurance Company (American Mutual). On March 9, 1989, however, American Mutual was declared insolvent, and the fund assumed American Mutual's obligations. Both Leviton and AIW appeal from a partial summary judgment entered in accordance with Rules 54(b) and 56 of the Superior Court Rules of Civil Procedure, which granted judgment for the fund with respect to the constitutional defenses raised by the defendants. We affirm.

The fund is a nonprofit, unincorporated legal entity established by the Legislature as a means to guarantee payments to an insured in the event an insurer becomes insolvent and is unable to discharge its obligations. *See* G.L.1956 § 27–34–2. Designed to protect both claimants and policyholders from the catastrophic consequences of an insurer's insolvency, the fund's income is derived from assessments made upon all insurers transacting business in Rhode Island. *See McGuirl v. Anjou International Co.,* 713 A.2d 194, 197 (R.I.1998); *Medical Malpractice Joint Underwriting Association of Rhode Island v. Rhode Island Insurers' Insolvency Fund,* 703 A.2d 1097, 1100 (R.I. 1997). *See also* § 27–34–2. Such protection, however, is not absolute, and payment is limited to "covered claims" made in the specific circumstances set forth in the Rhode Island Insurers' Insolvency Fund Act (act). *See Bassi v. Rhode Island Insurers' Insolvency Fund,* 661 A.2d 77, 80 (R.I.1995); *Whitehouse v. Rumford Property and Liability Insurance Co.,* 658 A.2d 506, 508 (R.I. 1995). We have consistently construed the act in accordance with the public-policy considerations that support the objectives of the statute. *See Medical Malpractice Joint Underwriting Association,* 703 A.2d at 1102; *Bassi,* 661 A.2d at 80.

In 1988, one year before American Mutual's insolvency and two years after the expiration of Leviton's and AIW's insurance policies, the General Assembly repealed the entire act and enacted P.L.1988, ch. 407. The prior enactment, P.L.1970, ch. 166, specifically provided that "the fund shall have no cause of action against the insured of the insolvent insurer for any sums it has paid out." P.L.1970, ch. 166 (§ 27–34–8(f)). The 1988 enactment (P.L.1988, ch. 407), however, did not afford such blanket immunity to all insureds and included a provision, § 27–34–11(b)(1),[1] which permitted the fund to recover all amounts paid on behalf of an insured with a net worth in excess of $50 million. Section 27–34–11, entitled "Effect of paid claims," states in pertinent part:

"(b) The fund shall have the right to recover from the following persons the amount of any 'covered claim' paid on behalf of the person pursuant to this chapter:

---

1. This section was originally identified in the 1988 act as G.L.1956 § 27–34–11(2)(a). It is

presently codified at § 27–34–11(b)(1) of the act.

"(1) Any insured whose net worth on December 31 of the year next preceding the date the insurer became an insolvent insurer exceeded fifty million dollars ($50,-000,000) and whose liability obligations to other persons are satisfied in whole or in part by payments made under this chapter."

On May 13, 1993, the fund filed a complaint in Providence County Superior Court, alleging that it had made payments in excess of $1 million on Leviton and AIW's behalf. Furthermore the fund alleged that Leviton had a net worth in excess of $50 million and that together Leviton and AIW had a combined net worth in excess of $50 million.[2] Thus, pursuant to § 27–34–11(b)(1) the fund demanded full recovery for the sums it had previously paid to defendants as a result of American Mutual's insolvency.

■ The defendants asserted numerous affirmative defenses to the fund's claim, including several challenges to the constitutionality of subsection 11(b)(1). The fund moved for partial summary judgment with respect to the constitutional claims, as well as a monetary judgment against Leviton but not against AIW. In addition the fund also sought an order declaring Leviton liable for all future payments made by the fund. Following a hearing in Superior Court, the trial justice issued a well-reasoned written decision awarding partial summary judgment in favor of the fund. The trial justice found that the recoupment provision did not violate the equal-protection clause, the due-process clause, or the contract clause of the United States Constitution or the Constitution of the State of Rhode Island.[3] The trial justice, however, declined to issue a monetary judgment against Leviton, finding that a genuine issue of material fact exists with respect to the amount the fund may recover. The trial

justice also declined to issue an order entitling the fund to all future payments.

On appeal defendants urge this Court to reverse the decision of the trial justice and to declare § 27–34–11(b)(1) in violation of the equal-protection clause of the United States and Rhode Island Constitutions because it creates an impermissible classification without promoting a legitimate governmental purpose. The defendants also contend that the application of the statute violates the due-process clause of the United States and the Rhode Island Constitutions because the statute is applied retroactively to insurance policies that were purchased, and even expired, before the effective date of the recoupment provision. Finally, defendants allege that subsection 11(b)(1) violates the contract clause of the United States and Rhode Island Constitutions because it impairs their contractual relationship with American Mutual without a legitimate governmental purpose for this impairment.

## Standard of Review

■ Rule 56(c) of the Superior Court Rules of Civil Procedure authorizes a trial justice to enter summary judgment in favor of a moving party in circumstances in which a careful and conscientious review of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted by the parties, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *See Senn v. MacDougall,* 639 A.2d 494, 495 (R.I.1994); *Golderese v. Suburban Land Co.,* 590 A.2d 395, 396 (R.I.1991). In cases that challenge the constitutionality of a statute, the party challenging its validity bears the burden of proving that the statute is unconstitutional. *See Power v. City of Providence,* 582 A.2d 895, 903 (R.I.1990). Therefore, defendants,

2. The parties agreed that Leviton's net worth for the years in question was in excess of $50 million. With respect to AIW's net worth, however, the parties were unable to agree, and AIW disputes the fund's method of calculating its net worth by combining its net worth with that of Leviton. Furthermore, for the purposes of this opinion defendants will be referred to collectively as "Leviton" or "defendants" unless otherwise specified.

3. The trial justice also found that the statute did not violate the takings clause of the United States Constitution. The defendants have not raised this issue on appeal, and therefore, it is deemed waived. *See Montecalvo v. Mandarelli,* 682 A.2d 918, 926 (R.I.1996).

although the nonmoving parties in this summary judgment arena, nonetheless bear the burden of establishing that § 27–34–11(b)(1) is unconstitutional. Furthermore, because acts of the Legislature enjoy the presumption of constitutionality, *see Burrillville Racing Association v. State*, 118 R.I. 154, 157, 372 A.2d 979, 982 (1977), defendants bear the burden of demonstrating its unconstitutionality beyond a reasonable doubt. *See State v. Beck*, 114 R.I. 74, 77, 329 A.2d 190, 193 (1974). Against this backdrop we begin our analysis.

### Equal–Protection Claim

Leviton argues that as applied in this case, § 27–34–11(b)(1) violates the equal-protection guarantees of the Fourteenth Amendment to the United States Constitution and article 1, section 2, of the Rhode Island Constitution. Because these provisions provide for similar protections, a separate analysis is unnecessary. *See Rhode Island Depositors Economic Protection Corp. v. Brown*, 659 A.2d 95, 100 (R.I.1995).

■ It is well settled that any equal-protection analysis begins with an examination of the nature of classification created by the Legislature. *Id.* When the classification does not involve a fundamental right and is not related to a suspect classification, the test for constitutionality is more relaxed. *See City of Pawtucket v. Sundlun*, 662 A.2d 40, 60 (R.I.1995). In these circumstances the legislation need only be "rationally related to a legitimate state interest" in order to survive constitutional scrutiny. *Id.* (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976) (per curiam)).

■ In this case we note that § 27–34–11(b)(1) is designed to accomplish a purely economic purpose, that is, to preserve the limited resources of the fund by requiring insureds with a net worth in excess of $50 million to reimburse the fund for all payments made in the course of discharging the insured's liability. "Economic and social regulation is considered the classic area where rational basis analysis is applied." *Kleczek v. Rhode Island Interscholastic League, Inc.*, 612 A.2d 734, 737 (R.I.1992). Thus with

respect to economic legislation it is only when the classification created by the statute is determined to be "wholly irrelevant to the achievement of the State's objective," *Kennedy v. State*, 654 A.2d 708, 712 (R.I.1995) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961)), that the equal-protection clause will be impaired. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Kennedy*, 654 A.2d at 712–13 (quoting *McGowan v. Maryland*, 366 U.S. at 425–26, 81 S.Ct. at 1105, 6 L.Ed.2d at 399). Thus, when a challenged economic statute responds to a legitimate legislative concern and that statute may achieve a resolution of that problem, it must be sustained on equal-protection grounds. *See Kennedy*, 654 A.2d at 712.

In this case the trial justice relied on the reasoning articulated in *Borman's Inc. v. Michigan Property & Casualty Guaranty Association*, 925 F.2d 160 (6th Cir.1991). In *Borman's* the Sixth Circuit Court of Appeals addressed the constitutionality of a Michigan statute that excluded from coverage insureds with a net worth in excess of a statutorily-calculated maximum. *Id.* at 161. In upholding the statute, the *Borman* court held that a company's net worth was an appropriate measure to employ in determining an insured's ability to absorb a loss. *Id.* at 164. Likewise, although we acknowledge that our Legislature could very well have selected a higher net worth minimum, or some other criterion, we agree with the Sixth Circuit's reasoning and conclude that a $50 million net worth threshold is reasonable and rationally related to the public purpose underlying the act.

Moreover, the fact that § 27–34–11(b)(1) provides for recovery of payments, as opposed to an outright denial of coverage, is further evidence of the Legislature's intention to deliver benefits to those in immediate need, in this case, Leviton's injured workers. By mandating that the fund step into the shoes of the insolvent insurer and pay all covered claims without regard to a company's net worth, the Legislature has clearly evinced its intention that benefits first be paid to injured employees. The Legisla-

ture's decision to include a recoupment provision applicable to companies with net worths in excess of $50 million merely ensures that sufficient funds will be available to accomplish this important objective. Thus we are satisfied that § 27–34–11(b)(1) is rationally related to a legitimate state interest and therefore does not violate the equal-protection guarantees afforded by the State and the Federal Constitutions. We also agree with the trial justice that "whether the act serves a legitimate objective and whether the act is rationally related to that objective, are questions of law" capable of resolution on the basis of this record. *See Power,* 582 A.2d at 902.

### Due–Process Claim

■ Next Leviton presses a due-process challenge to § 27–34–11(b)(1) on the ground that this provision operates retroactively as applied to the facts of this case. The defendants argument is premised on the fact that the American Mutual policies were in effect from 1983 to 1986, yet the fund seeks recoupment pursuant to a statute enacted in 1988. Indeed defendants suggest that because these injuries occurred at a time when the fund was prohibited from seeking reimbursement, *see* P.L.1970, ch. 166 (§ 29–34–8(f)), they were entitled to rely on the law as it existed when the contractual obligations were undertaken. Leviton also argues that the statute deprived defendants of any advance notice regarding potential liability and therefore denied defendants the opportunity to bring its settled expectations into conformity with the requirements of the new law. Accordingly Leviton alleges that in this case the application of the 1988 recoupment provision to insurance policies that had expired in 1986 deprives defendants of substantive due-process rights.

■ "Due process prohibits legislation that would retroactively unreasonably impair substantive rights, or 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Brown,* 659 A.2d at 102 (quoting *Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d

229, 262 (1994)). Only when the adverse effects of the statute are activated by events that occurred before the effective date of its enactment will the statute's reach be declared retrospective. *See McAndrews v. Fleet Bank of Massachusetts, N.A.,* 989 F.2d 13, 16 (1st Cir.1993). "The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date." *Id.* Thus, the answer to the threshold question in determining whether § 27–34–11(b)(1) operates retroactively hinges on whether the triggering event occurred before or after the statute's effective date. In this case we conclude that the triggering event occurred after the statute's 1988 enactment.

At the outset we acknowledge that these policies were purchased by Leviton at a time when state law barred the fund from seeking recovery from any insured and that the policies had expired two years before the recoupment provision was enacted. We also recognize that Leviton may have relied upon the then-existing law at the inception of the contracts. None of these factors, however, reduced American Mutual's obligations under the policies, and none of these factors triggered the fund's right of recovery. Rather the triggering factor was the subsequent insolvency of American Mutual in March 1989, an event that occurred well after the enactment of § 27–34–11(b)(1). The fact that the work-related injuries giving rise to these claims occurred prior to the effective date of the act is not controlling since the fund was not obligated to pay these claims. In addition merely entering into contracts for insurance to discharge one's potential workers' compensation liability does not in itself implicate the recoupment provision of the act. Rather it is the subsequent insolvency of the insurer and the concomitant obligation to pay the statutorily mandated claims that triggered the statute. The trial justice determined that American Mutual's insolvency occurred on March 9, 1989, well after the effective date of the 1988 act, and that, therefore, defendants' due-process rights were not violated. We agree with this analysis, which is consistent with our precedent.

■ In *Liberty Mutual Ins. Co. v. Rhode Island Insurers' Insolvency Fund,* 675 A.2d 417, 418 (R.I.1996) (mem.), we determined that "the date an insurer becomes insolvent [is] the pivotal date in determining whether the July 1988 act applies to a given claim." We further declared that "the [1988] version of the [a]ct applies to claims involving an insurer that became insolvent on or after July 1, 1988." *Id.* Therefore, in the context of a retrospective analysis, the date the insurer becomes insolvent is the controlling criterion and not the date that gives rise to the claim. Consequently it is our opinion that this statute does not operate retroactively and it is therefore unnecessary for us to analyze § 27–34–11(b)(1) further with regard to defendants' due-process rights.

## Contract Claim

■ The final challenge to the constitutionally of § 27–34–11(b)(1) is that the 1988 recoupment provision violates the prohibition against the impairment of contracts found in article 1, section 10, of the United States Constitution and article 1, section 12, of the Rhode Island Constitution. The contract clauses of both the State and the Federal Constitutions limit the power of the government to enact laws that either modify its own contracts or impair the obligations of a private party to a contract. *See Brennan v. Kirby,* 529 A.2d 633, 638 (R.I.1987). While acknowledging that the responsibility for the payment of workers' compensation benefits ultimately rests with Leviton, defendants argue that they "made a conscious business decision to shift that liability to American Mutual by purchasing an insurance contract." Thus, Leviton insists, it had a reasonable expectation that its contract with American Mutual would result in complete indemnification for any workers' compensation liability that it incurred during the policy periods and that this expectation was eliminated by the 1988 enactment of the recoupment provision.

■ We have previously adopted the three-pronged test employed by the United States Supreme Court to determine whether legislation unconstitutionally impairs the obligation of contracts. *See Brown,* 659 A.2d at 106. "First, has the state law, in fact, sub-stantially impaired a contractual relationship?" *Id.* (citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569, 580 (1983)). "Second, if the law constitutes a substantial impairment, can the state show a legitimate public purpose behind the regulation[?]" *Brown,* 659 A.2d at 106. Third, is the modification of the rights and responsibilities of the parties to the contract nonetheless reasonable and appropriate in light of the public purpose that underlies the legislation? *Id.* We conclude that defendants have failed to meet the first-prong of this test and therefore cannot demonstrate the impairment of any contractual obligation.

The statute under attack in this case clearly does not have an impact on any putative contractual obligations of the State of Rhode Island, *see Retired Adjunct Professors of Rhode Island v. Almond,* 690 A.2d 1342 (R.I. 1997), or its political subdivisions, *see Brennan, supra.* Rather the facts of this case are more akin to the constitutional challenge to the Depositors Economic Protection Corporation (DEPCO) legislation enacted in response to the state's credit union crisis. *See Brown,* 659 A.2d at 98. The DEPCO legislation created an entirely new receivership law for failed financial institutions and eliminated the protections afforded by G.L.1956 chapter 10 of title 6, entitled the "Uniform Contribution Among Joint Tortfeasors Act." *Brown,* 659 A.2d at 99. As a result a non-settling party found liable in a lawsuit brought pursuant to the DEPCO act could no longer look to other joint tortfeasors who did not pay their proportionate share of liability. *Id.* "[U]nder the DEPCO Act a tortfeasor who refuses to settle, but is later found liable at trial, may not bring an action against a settler for contribution" and is limited to deducting "the full amount of any settlements by joint tortfeasors from the judgment against it." *Id.* In rejecting a challenge to the DEPCO statute on the ground that it impermissibly impaired the contract rights of potential defendants, this Court declared that no contract rights were implicated in the enactment. *Id.* at 106. We stated,

"The Uniform Contribution Among Joint Tortfeasors Act * * * as the common law

that preceded it (wherein no contribution was provided among joint tortfeasors), arises out of the law of the state and not from any private agreement." *Id.*

Leviton suggests that the provisions of the 1970 fund act set forth the obligations of the insurer, the insured, and the fund in the event of an insolvency and was thus a critical factor in the parties' agreement. The defendants maintain that because the policies were purchased with the expectation that the fund would become a secondary insurer in the event of American Mutual's insolvency, any alteration affecting this expectation results in the impermissible impairment of Leviton's contract rights. The inherent defect in this argument, however, is the fact that the fund is not a party to the insurance policies and did not undertake any action to impair Leviton's contract. The fund's responsibilities are statutorily mandated and are not created by or subject to any private agreements. It is therefore our opinion that the parties' contractual relationship was impaired by the insolvency of American Mutual in 1989 and its subsequent inability to perform the agreement, not by the enactment of the 1988 recoupment provision.

Leviton also argues that the General Assembly, by amending the act in 1988, legislated away the safeguards built into the contracts and left defendants with no ability to enforce their rights under the policies. Leviton maintains that § 27–34–11(b)(1) substantially impaired its contracts with American Mutual by placing it in the same position it would be in if the insurance contracts had never existed, despite the fact that Leviton had paid premiums on the policies. This is simply not the case.

 In the recent case *Retired Adjunct Professors, supra,* we were called upon to scrutinize legislative amendments to the state's pension laws that reduced the amount of part-time state work a professor could perform before his or her state-pension benefits would be suspended. 690 A.2d at 1344. Although we acknowledged that "in deciding to retire, plaintiffs may have relied on the potential availability of future reemployment offers from the State * * * [plaintiffs] were not entitled to conclude that these provisions

were fossilized in legislative amber." *Id.* at 1345. We also stated that "[t]he mere fact that a state enacts laws that benefit the interests of some people does not automatically create contract rights to those benefits." *Id.* We are of the opinion that this reasoning is equally applicable to the facts in this case since

"[m]ere reliance by benefited parties on the legislative enactments and their unilateral beliefs concerning what the statute will mean to them in the future, no matter how reasonable they may seem at the time, cannot create a legislative intent to establish enforceable contractual rights that is not otherwise manifest in the words of the legislation." *Id.* at 1346.

Accordingly we conclude that § 27–34–11(b)(1) does not impair the contract clause of the State and the Federal Constitutions.

In conclusion we are satisfied that § 27–34–11(b)(1) is constitutional legislation. We conclude that subsection 11(b)(1) is economic legislation enacted by the General Assembly, rationally related to a legitimate public purpose, and that does not violate the defendants' equal-protection guarantees under the State and the Federal Constitutions. Furthermore we are satisfied that § 27–34–11(b)(1) has no retrospective application as applied in this case, nor does it impair the contract rights of the parties.

Therefore, for the reasons set forth herein, the defendants' appeal is denied and dismissed, and the entry of partial summary judgment is affirmed. The papers in the case may be remanded to the Superior Court.