RHODE ISLAND INSURERS'
INSOLVENCY FUND

v.

LEVITON MANUFACTURING
CO., INC.

No. 2001–422–Appeal.

Supreme Court of Rhode Island.

Jan. 7, 2003.

Joseph C. Tanski, Alan J. Cooke, Boston, MA; James V. Santaniello, for Plaintiff.

Deming E. Sherman, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

**OPINION**

PER CURIAM.

The plaintiff, Rhode Island Insurers' Insolvency Fund (the Fund), appealed the Superior Court's entry of an amended judgment that stipulated the amount of reimbursement that the Fund was owed by

the defendant, Leviton Manufacturing Co., Inc. (Leviton). The Fund argued on appeal that the Superior Court justice erred in his determination of the date from which postjudgment interest accrued on Leviton's reimbursement of workers' compensation payments under the Rhode Island Insurers' Insolvency Act (the act). The Fund also appealed the denial of its request for discovery sanctions against Leviton. This case was heard on December 3, 2002, pursuant to an order directing the parties to show cause why the issues raised should not be decided summarily. Having reviewed the record, the memoranda of the parties, and the arguments of counsel, we conclude that the parties have not shown cause, and we affirm the judgment of the Superior Court.

This appeal marks the third occasion that this case has been before us. The facts and underlying dispute were presented in *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.,* 716 A.2d 730 (R.I.1998) (*Fund I*), and *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.,* 763 A.2d 590 (R.I. 2000) (*Fund II*). The Fund is a nonprofit entity created by the Legislature as a means to guarantee certain payments to an insured if its insurer becomes insolvent. *Fund I,* 716 A.2d at 732. Such payments are limited to the claims covered in the specific circumstances set forth in the act. *Id.* In 1988, the General Assembly repealed the entire act and passed a new statute that permitted the Fund to recover all amounts it had paid on behalf of an insured with a net worth in excess of $50 million. *Id.* This case stems from the Fund's effort to recover such a reimbursement from Leviton.

In *Fund I,* we upheld the constitutionality of the reimbursement provision and thus affirmed the Superior Court's granting of partial summary judgment in favor of the Fund on Leviton's constitutional claims challenging the act. *Id.* at 733, 737. Subsequent to that opinion, after some additional discovery, the Fund renewed its motion for a summary judgment directing the reimbursement and also moved for sanctions against Leviton. *Fund II,* 763 A.2d at 594. On July 2, 1999, the Superior Court entered judgment, directing that the Fund recover $2,839,023.58 for claims paid by the Fund on Leviton's behalf through December 31, 1998; $2,544,235.76 in prejudgment interest through December 31, 1998, and $946.96 per diem thereafter; and costs and attorneys' fees totaling $125,000. *Id.* Leviton appealed the judgment, and this Court affirmed the Superior Court's grant of summary judgment on the reimbursement claim and the award of sanctions, but vacated the award of prejudgment interest.

Leviton moved for entry of a revised judgment in accordance with *Fund II* on January 11, 2001. The Fund filed a motion in opposition to Leviton's motion, arguing that it was entitled to postjudgment interest from the date of the Superior Court's entry of judgment on July 2, 1999. Also, in an effort to recover non-statutory prejudgment interest and an award against Leviton for its delayed reimbursement, the Fund filed a separate motion to compel discovery of the rate of interest that Leviton paid to borrow money. After a hearing on the motions, the Superior Court justice granted Leviton's motion for an amended judgment, which was entered on August 28, 2001. The amended judgment awarded no postjudgment interest between July 2, 1999, the date of the Superior Court judgment, and December 13, 2000, the date of this Court's opinion in Fund II. Pursuant to that judgment, the Fund could not recover non-statutory prejudgment interest or any sanctions as a result of delay in reimbursement from

Leviton, nor were discovery sanctions granted. The Fund appealed.

The Fund argued on appeal to this Court that, pursuant to G.L.1956 § 9–21–8, it was entitled to postjudgment interest, accruing from the entry of the Superior Court's judgment on July 2, 1999. The Fund cited *Industrial National Bank of Rhode Island v. Isele*, 110 R.I. 157, 290 A.2d 903 (1972), for the proposition that the judgment on July 2, 1999, should bear interest from the date it was entered until the date it was affirmed in part by this Court in *Fund II*. The Fund sought to distinguish two later cases, *Bradford Dyeing Association, Inc. v. J. Stog Tec GMBH*, 809 A.2d 468 (R.I.2002) (per curiam) and *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.*, 494 A.2d 897 (R.I.1985), in which prejudgment interest accrued while an appeal was pending. The Fund maintained that when, as here, prejudgment interest cannot be accrued, postjudgment interest runs from the date of the trial court's entry of judgment.

■ Although § 9–21–8 provides that postjudgment interest shall apply to every judgment for money, *Cardi Corp. v. State*, 561 A.2d 384, 388 (R.I.1989), we look to § 9–21–10 to determine when both pre- and postjudgment interest begin to accrue. *See id.* at 386–88 (citing § 9–21–10 and cases interpreting that section to determine when both pre- and postjudgment interest accrue). This Court consistently has held that for the purpose of triggering postjudgment interest, the term "judgment" in § 9–21–10(a) "contemplates a final judgment, one that finally adjudicates the rights of the parties, whether it is a judgment from which no appeal is taken or a judgment that is affirmed by this [C]ourt after consideration and rejection of the appellant's contentions." *Bradford Dyeing Association, Inc.*, 809 A.2d at 471

(quoting *Welsh Manufacturing*, 494 A.2d at 898). Thus, we held in *Bradford Dyeing* that a final judgment "occurs when the trial court enters judgment, if the debtor has not filed a timely notice of appeal, or when this Court affirms the judgment on appeal, whichever event first occurs." *Id.* Therefore, since this Court's holding in *Isele*, *Welsh Manufacturing* and its progeny have clarified when postjudgment interest begins to accrue. Because the Superior Court judgment on July 2, 1999, was appealed, it was not a final judgment for the purpose of assessing postjudgment interest until the Supreme Court affirmed that judgment on December 13, 2000.

■ Next, the Fund argued that because this Court ruled that the Fund was not entitled to § 9–21–10 prejudgment interest, the Fund is entitled to seek information that would support its claim for "common law" prejudgment interest. The hearing justice correctly denied the Fund's motion to compel discovery for this purpose. We disagree with the Fund's contention that *Fund II's* holding was limited to barring the Fund from collecting statutory prejudgment interest under § 9–21–10, and thus left open the possibility of collecting common law prejudgment interest. Our holding in *Fund II* was based on our construction of the act. We determined that the Legislature did not make prejudgment interest available to the Fund because

"the Fund is not seeking damages, but merely reimbursement for payments it was statutorily required to make on Leviton's behalf, pursuant to chapter 34 of title 27 (the Insolvency Fund Act). The Fund has suffered no additional loss, deprivation, or injury, save for the statutorily required expenditures made on Leviton's behalf pursuant to the Insolvency Fund Act." *Fund II*, 763 A.2d at 597–98.

This ruling thus foreclosed the possibility that the Fund was entitled to non-statutory prejudgment interest or to prejudgment interest under § 9–21–10. Moreover, the 1999 amendment (P.L.1999, ch. 498, § 1) to G.L.1956 § 27–34–11(b)(1) of the act made clear that the Legislature intended that no prejudgment interest, statutory or otherwise, be accrued on Insolvency Fund Act reimbursements. Specifically, subsection (b)(1) of § 27–34–11 now provides that "there shall be no recovery of any prejudgment interest on any pending or future claims against such an insured, including claims presently in suit or on appeal[.]"

Because we hold that the Fund is completely barred from recovering statutory or common law prejudgment interest, the trial justice correctly denied the Fund's motion for discovery sanctions, given that the requested discovery was relevant only to the Fund's claim for non-statutory prejudgment interest.

 As the hearing justice noted, in most instances prejudgment interest is available to those who succeed in winning a judgment, and in all civil actions for damages, prejudgment interest is required to accrue under § 9–21–10(a). In such instances, interest continues to accrue until the date of final judgment. Here, however, the Fund is not entitled to any prejudgment interest, and thus it cannot recover interest on the Superior Court's judgment for the period during which it was appealed.

Accordingly, we deny the Rhode Island Insurers' Insolvency Fund's appeal and affirm the August 28, 2001 judgment of the Superior Court that denied both the Fund's request for postjudgment interest for the period before December 13, 2000, and the Fund's motion for discovery sanctions. The papers in the case may be returned to the Superior Court.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.