**Supreme Court**

No. 2013-254-C.A.

(P2/09-51A)

State               :

v.                 :

Robert Beaudoin       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                              :

Robert Beaudoin                :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  General Laws 1956 § 12-19-18 was amended by the

General Assembly in 2010, see P.L. 2010, ch. 311, § 1, to provide that a sentence of

imprisonment after a finding of probation violation shall be quashed, and the imprisonment

terminated, in certain circumstances occurring after a judgment of probation violation is entered

by a justice of the Superior Court.  See § 12-19-18(b).[1]  In this appeal, we are called upon to

---

[1] General Laws 1956 § 12-19-18, as amended by P.L. 2010, ch. 311, § 1, provides, in pertinent part, that:

> "(b)    Whenever any person, after an evidentiary hearing, has been sentenced to imprisonment for violation of a suspended sentence or probationary period by reason of the alleged commission of a felony or misdemeanor said sentence of imprisonment shall, on a motion made to the court on behalf of the person so sentenced, be quashed, and imprisonment shall be terminated when any of the following occur on the charge which was specifically alleged to have constituted the violation:

> "(1) After trial [the] person is found 'not guilty' or a motion for judgment of acquittal or to dismiss is made and granted pursuant to Superior or District Court Rule of Criminal Procedure 29;

> "(2) After hearing evidence, a 'no true bill' is returned by the grand jury;

determine whether this case—in which a trial justice imposed a suspended sentence and probationary term on the defendant, Robert Beaudoin, following a plea of nolo contendere entered before the 2010 amendment but who was adjudged to be a probation violator, imprisoned as a result, and then acquitted by a jury on the underlying charges after the statute was amended—involves retroactive application or prospective application of § 12-19-18(b). For the following reasons, we conclude that this case entails prospective, not retroactive, application of the statute. Therefore, we vacate the judgment of the Superior Court.[2]

**Facts and Travel**

In 2009, defendant—no stranger to the criminal justice system—entered a plea of nolo contendere to one count of felony assault, which involved stabbing his victim in the throat with a razor blade or knife; he was sentenced to fifteen years at the Adult Correctional Institutions (ACI), five months to serve and the remaining 175 months suspended with probation.[3] The

---

> "(3) After consideration by an assistant or special assistant designated by the attorney general, a 'no information' based upon a lack of probable cause is returned;
>
> "(4) A motion to dismiss is made and granted pursuant to the Rhode Island [G]eneral [L]aws [1956] § 12-12-1.7 and/or Superior Court Rule of Criminal Procedure 9.1; or
>
> "(5) The charge fails to proceed in District or Superior Court under circumstances where the state is indicating a lack of probable cause, or circumstances where the state or its agents believe there is doubt about the culpability of the accused."

[2] We acknowledge the amicus curiae brief submitted by the Rhode Island Association of Criminal Defense Lawyers.

[3] The record is silent as to the reasons why this brutal stabbing warranted only five months of imprisonment when a fifteen-year prison sentence was imposed.

General Assembly amended § 12-19-18 and added subsections (b) and (c)[4] on June 25, 2010. See P.L. 2010, ch. 311, § 1. Thereafter, in May 2012, defendant was arrested and charged with one count of second-degree sexual assault, see G.L. 1956 § 11-37-4, and one count of robbery, see G.L. 1956 § 11-39-1. Additionally, the state filed, pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure, a notice of probation violation in this case based on the conduct giving rise to these charges. After an evidentiary hearing, a trial justice declared defendant to be a probation violator, removed two years of the suspended sentence, and ordered defendant to serve two years at the ACI.[5] The defendant then proceeded to a jury trial in Superior Court on the underlying charges[6] and was acquitted on both counts on April 26, 2013.

On the heels of his acquittal, defendant filed a motion to terminate his imprisonment under § 12-19-18(b). Pursuant to an administrative order of the presiding justice of the Superior Court, all motions seeking relief under § 12-19-18(b) were assigned to a single Superior Court trial justice. Accordingly, before hearing this case, the trial justice decided a motion in a case with a similar chronology to that of defendant's case: where the judgment of conviction was entered before the effective date of § 12-19-18(b), and the defendant was adjudicated to be a probation violator after the 2010 amendment. See State v. Ford, No. P2/05-83A, 2012 WL

---

[4] Section 12-19-18(c) provides that:

> "This section shall apply to all individuals sentenced to imprisonment for violation of a suspended sentence or probationary period by reason of the alleged commission of a felony or misdemeanor and shall not alter the ability of the court to revoke a suspended sentence or probationary period for an allegation of conduct that does not rise to the level of criminal conduct."

[5] A description of the conduct giving rise to the probation violation hearing is unnecessary to this appeal but is set forth in our opinion affirming the trial justice's adjudication of probation violation. See State v. Beaudoin, No. 2012-325-C.A. (R.I., filed April 26, 2016).

[6] The robbery count was evidently amended before defendant's trial in Superior Court to a charge of larceny from the person, in violation of G.L. 1956 § 11-41-7.

3638916, at *1-2 (R.I. Super. Ct. Aug. 20, 2012). The defendant in that case (Ford) was then ordered to be incarcerated on the previously imposed suspended sentence and subsequently acquitted by a jury after a trial on the underlying charges. Id. at *2. In light of this identity of issues, the trial justice permitted defendant to incorporate the arguments made by the defendant in Ford. Similarly, the state in this case incorporated the arguments it made in Ford. The state's arguments in Ford rested on its position that the word "sentence" in § 12-19-18(b) refers to the imposition of the suspended sentence—which, in Ford's case, predated the 2010 amendment— and not the execution of that previously imposed sentence following the adjudication of probation violation. From this premise, the state argued that § 12-19-18(b) was not available to Ford because the statute could not be applied retroactively. Finally, the state contended that "the retroactive application of * * * § 12-19-18(b) would not pass constitutional muster" under separation-of-powers principles because it would vacate or modify a prior court judgment—the original judgment of conviction that included the suspended sentence—that was entered before the 2010 amendment. (Emphasis added.) In making this constitutional argument in Ford, the state did not argue that, if this case involved prospective, and not retroactive, application of the statute, § 12-19-18(b) was unconstitutional.

In this case, although the trial justice determined that defendant met the prerequisites for relief under § 12-19-18(b),[7] he nonetheless denied defendant's motion for two reasons. First, the trial justice concluded that application of § 12-19-18(b) in this case required retroactive application of the 2010 amendment, and he was of the opinion that the statute could not be applied retroactively. To support this conclusion, he expressly adopted his reasoning in Ford, in

---

[7] At oral argument before this Court, the state conceded that, because it failed to argue below that defendant had not satisfied the requirements of the statute, it was not challenging this determination of the trial justice. Accordingly, we express no opinion on this issue.

which the trial justice, relying on this Court's opinion in State v. Garnetto, 75 R.I. 86, 63 A.2d 777 (1949), determined that, because a probation violation hearing is but "a continuation of the original prosecution," a defendant who was given a suspended sentence before the 2010 amendment could not be granted relief under the statute without retroactive application. Ford, 2012 WL 3638916, at *8 (quoting State v. Gautier, 871 A.2d 347, 359 (R.I. 2005)).

The trial justice went on to conclude that, notwithstanding the infirmity of retroactive application, defendant's motion also should be denied for an independent reason: that, even if applied prospectively, § 12-19-18(b) constituted an unconstitutional exercise of judicial power by the General Assembly. As he did for his conclusion on the retroactivity issue, the trial justice expressly incorporated the constitutional analysis that he laid out in Ford. The trial justice reasoned that § 12-19-18(b) improperly disturbed the judgment embodying the probation violation adjudication and the incarcerative term ordered as a result of that adjudication. He declared:

> "[T]he General Assembly is without authority to affect a judgment--such as a finding of violation along with the particular imposition of sentence--that was previously entered by this [c]ourt. Such action usurps the authority of [the Superior] Court and its ability to determine if a defendant has failed to keep the peace [and be] of good behavior.
>
> "* * * [T]he General Assembly exceeds its power when it passes legislation that affects, or otherwise encroaches on judgments and verdicts entered by the [c]ourts.
>
> "* * * Any attempt by the Legislature to disturb a finding of a violation and the resultant imposition of a sentence by the hearing justice is an encroachment on or an attempt to subvert the power of the judiciary." Ford, 2012 WL 3638916, at *14 (emphases added).

See also id. at *19 ("[Section 12-19-18(b)] usurps a core judicial function of [the Superior] Court. Consequently, § 12-19-18(b) cannot stand as written and must be deemed

- 5 -

unconstitutional as it encroaches on the judiciary's power."). The trial justice also found it problematic that "the statute provides for no discretion to the members of [the Superior] Court; instead, the statute mandates that the sentence must be quashed." Ford, 2012 WL 3638916, at *15. In addition, the trial justice concluded that § 12-19-18(b) unconstitutionally "attempts to impose a rule of decision on a judgment of the Superior Court in the instant case at a time subsequent to the entry of that judgment." Ford, 2012 WL 3638916, at *15. Finally, the trial justice expressed his belief that "the better practice would be to allow a defendant to obtain a reconsideration of a judgment of the Superior Court finding a violation." Id. at *19.

The defendant timely appealed.[8]

## Standard of Review

The question of whether a statute's application in a particular case is retroactive or prospective is legal in nature; accordingly, we review it de novo. See Arevalo v. Ashcroft, 344 F.3d 1, 10 (1st Cir. 2003); see also Jaghoori v. Holder, 772 F.3d 764, 769 (4th Cir. 2014); Faiz-Mohammad v. Ashcroft, 395 F.3d 799, 801 (7th Cir. 2005).

## Analysis

### Retroactivity

A law is applied retroactively when "it changes the legal consequences of acts completed before its effective date." State v. Desjarlais, 731 A.2d 716, 718 (R.I. 1999) (quoting Miller v. Florida, 482 U.S. 423, 430 (1987), abrogated in part on other grounds by California Department of Corrections v. Morales, 514 U.S. 499, 506-07 n.3 (1995)). However, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating

---

[8] Meanwhile, the trial justice granted defendant's motion to be released on bail pending his appeal.

the statute's enactment * * * or upsets expectations based in prior law." Landgraf v. USI Film Products, 511 U.S. 244, 269 (1994).

The critical first step in the retroactivity inquiry is identifying the conduct or event that triggers the statute's application. See Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co., 716 A.2d 730, 735 (R.I. 1998) (Leviton). Once properly identified, the triggering event guides the analysis. See id. ("The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date." (quoting McAndrews v. Fleet Bank of Massachusetts, N.A., 989 F.2d 13, 16 (1st Cir. 1993))). On the one hand, in a case where the triggering event occurs before the statute's enactment, the statute applies retroactively. See id. ("Only when the adverse effects of the statute are activated by events that occurred before the effective date of its enactment will the statute's reach be declared retrospective." (emphasis added)). On the other, when a statute's application is triggered by an event that occurs after the statute's effective date, it operates prospectively, not retroactively. See McAndrews, 989 F.2d at 16 ("[A] statute's application is usually deemed prospective when it implicates conduct occurring on or after the effective date. * * * Even when the later-occurring circumstance depends upon the existence of a prior fact, that interdependence, without more, will not transform an otherwise prospective application into a retroactive one.").

In the last analysis, the retroactivity inquiry "demands a commonsense, functional judgment," Martin v. Hadix, 527 U.S. 343, 357 (1999), and "[t]he key lies in how the law interacts with the facts," McAndrews, 989 F.2d at 16.

In this case, we turn to the statutory text to divine the triggering events.  Section 12-19-18(b) provides:

> "Whenever any person, after an evidentiary hearing, has been sentenced to imprisonment for violation of a suspended sentence or probationary period by reason of the alleged commission of a felony or misdemeanor said sentence of imprisonment shall, on a motion made to the court on behalf of the person so sentenced, be quashed, and imprisonment shall be terminated when any of the following occur on the charge which was specifically alleged to have constituted the violation:
>
> "(1) After trial [the] person is found 'not guilty' or a motion for judgment of acquittal or to dismiss is made and granted pursuant to Superior or District Court Rule of Criminal Procedure 29;
>
> "(2) After hearing evidence, a 'no true bill' is returned by the grand jury;
>
> "(3) After consideration by an assistant or special assistant designated by the attorney general, a 'no information' based upon a lack of probable cause is returned;
>
> "(4) A motion to dismiss is made and granted pursuant to the Rhode Island [G]eneral [L]aws [1956] § 12-12-1.7 and/or Superior Court Rule of Criminal Procedure 9.1; or
>
> "(5) The charge fails to proceed in District or Superior Court under circumstances where the state is indicating a lack of probable cause, or circumstances where the state or its agents believe there is doubt about the culpability of the accused."

Our close examination of the statute convinces us that there are three events that trigger application of § 12-19-18(b): (1) there is an evidentiary hearing; (2) a defendant is declared a violator and is "sentenced to imprisonment for violation of a suspended sentence or probationary

period," id.; and (3) the subsequent occurrence of one of the five events specified in subsection (b)(1)-(5) of § 12-19-18.[9]

In this case, there is no dispute that two of the triggering events—namely, an evidentiary hearing and an acquittal on the underlying charges, see § 12-19-18(b)(1)—occurred well after the 2010 amendment. With respect to the other triggering event, the state argued before the trial justice that the term "sentence" in § 12-19-18(b) refers to the imposition of the suspended sentence, which, in this case, occurred in 2009. We reject this interpretation of the statute.

Under the plain language of § 12-19-18(b), the phrase "sentence of imprisonment" clearly refers to imprisonment that results from the adjudication of probation violation and the execution of some or all of the previously imposed suspended sentence. See § 12-19-18(b) ("Whenever any person, after an evidentiary hearing, has been sentenced to imprisonment for violation of a suspended sentence or probationary period * * * said sentence of imprisonment shall * * * be quashed, and imprisonment shall be terminated * * *." (emphasis added)). In this case, defendant's motion seeks to terminate the imprisonment that was ordered as a result of the 2012 probation violation adjudication. The judgment reflecting that adjudication and the trial

---

[9] The statute imposes certain requirements that need not concern us in this case. For instance, the violation adjudication must be based on "the alleged commission of a felony or misdemeanor," and the subsequent occurrence of one of the five events specified in subsection (b)(1)-(5) of § 12-19-18 must relate to "the charge which was specifically alleged to have constituted the violation." Section 12-19-18(b). We note that the statute does not apply to other misconduct by the probationer "that does not rise to the level of criminal conduct." Section 12-19-18(c). Therefore, violation proceedings that arise from noncriminal conduct that transgresses the terms and conditions of probation—such as refusal to comply with special conditions of probation; failure to comply with sex-offender registration laws, where the violation adjudication is not predicated on a knowing failure to register, see G.L. 1956 § 11-37.1-10 (providing for criminal penalties for those who "knowingly" violate the registration laws); or failing to notify authorities after witnessing a murder, see State v. Gautier, 774 A.2d 882, 887 (R.I. 2001)—do not come within § 12-19-18(b). In this case, the state does not challenge, nor do we consider, whether the additional requirements of § 12-19-18(b) have been met. See supra note 7.

- 9 -

justice's decision to execute a portion of the previously imposed suspended sentence is the "sentence of imprisonment" envisioned by § 12-19-18(b).

Therefore, because all three triggering events occurred after the 2010 amendment to § 12-19-18, the statute operates prospectively, not retroactively, in this case.[10] The state, in arguing to the contrary, insists that this case involves retroactive application of § 12-19-18(b) because the statute "would alter the legal consequences of the probationary sentence that the Superior Court imposed in 2009." We disagree with this assertion. Application of § 12-19-18(b) in this case in no way modifies or amends the judgment that imposed the suspended sentence: The length of the suspended sentence remains unaffected; the terms and conditions of defendant's probation have similarly not changed; and, contrary to the state's assertion, the 2010 amendment had no effect on the burden of proof employed at a probation violation hearing.[11]

Undeterred, the state presses on, arguing that this case involves retroactive application of § 12-19-18(b) because it would "undermine the intent of the trial justice who imposed" the suspended sentence. Once again, we are unpersuaded. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment * * * or upsets expectations based in prior law." Landgraf, 511 U.S. at 269

---

[10] In his reply brief, defendant appears to assert that the only event that needs to postdate the 2010 amendment for § 12-19-18(b) to apply prospectively is the occurrence of one of the events set forth in subsection (b)(1)-(5) of § 12-19-18. Because we need not do so to decide this case, we express no opinion on the issue of whether a case where the defendant is determined to be a probation violator and imprisoned pursuant to the execution of a previously imposed sentence before the 2010 amendment, but an event delineated in subsection (b)(1)-(5) of § 12-19-18 occurs after the amendment, involves retroactive or prospective application of § 12-19-18(b).

[11] At most, § 12-19-18(b), by providing for termination of imprisonment, mandates the modification of the incarcerative component of the judgment of conviction and commitment that was entered after defendant was adjudicated to be a probation violator. However, because that judgment was entered in 2012, after the effective date of the 2010 amendment to § 12-19-18, this circumstance does not present a retroactivity problem in this case.

(emphasis added); cf. McAndrews, 989 F.2d at 16 ("[A] statute may modify the legal effect of a present status or alter a preexisting relationship without running up against the retroactivity hurdle."). Our decision in Leviton is instructive on this point. In that case, Leviton purchased workers' compensation insurance policies from American Mutual Life Insurance Company (American Mutual), at a time when the Rhode Island Insurers' Insolvency Fund Act (Insolvency Act) provided that "the fund shall have no cause of action against the insured of the insolvent insurer for any sums it has paid out." Leviton, 716 A.2d at 732 (quoting P.L. 1970, ch. 166); see also id. at 735. In 1988, one year before American Mutual became insolvent and two years after Leviton's insurance contract expired, the General Assembly repealed the Insolvency Act in its entirety, see P.L. 1988, ch. 407, § 1, and replaced it with a new Insolvency Act, see P.L. 1988, ch. 407, § 2, that included a provision that "permitted the fund to recover all amounts paid on behalf of an insured with a net worth in excess of $50 million." Leviton, 716 A.2d at 732. In 1993, the fund sued Leviton for a full refund of payments the fund made to Leviton, which had a net worth in excess of $50 million. Id. at 733. Leviton demurred, asserting, among other things, that the application of the refund provision of the new Insolvency Act to its situation constituted retroactive application. See id.

This Court rejected Leviton's retroactivity argument. See Leviton, 716 A.2d at 735-36. While acknowledging that Leviton purchased the policies at a time when state law barred the fund from seeking recovery and that "Leviton may have relied upon the then-existing law at the inception of the contracts," the Court explained that:

> "[N]one of these factors triggered the fund's right of recovery. Rather the triggering factor was the subsequent insolvency of American Mutual in March 1989, an event that occurred well after the enactment of [the refund provision of the new Insolvency Act]. * * * [M]erely entering into contracts for insurance to discharge one's potential workers' compensation liability does not in itself

implicate the recoupment provision of the act. Rather it is the subsequent insolvency of the insurer and the concomitant obligation to pay the statutorily mandated claims that triggered the statute." Id. at 735.

See also id. at 736 ("[I]n the context of a retrospective analysis, the date the insurer becomes insolvent is the controlling criterion and not the date that gives rise to the claim."). The Court thus concluded that the new Insolvency Act was not operating retroactively. See id.

Similarly, in this case, the mere fact that application of § 12-19-18(b) might frustrate the intent of the trial justice who imposed defendant's suspended sentence in 2009 does not mean that the statute is being applied retroactively in this case. As was true for the purchase of the policies in Leviton, the trial justice's imposition of the suspended sentence in 2009 is not the event that triggers application of § 12-19-18(b).[12]

For these reasons, we hold that this case involves prospective, not retroactive, application of § 12-19-18(b). See Desjarlais, 731 A.2d at 718; Leviton, 716 A.2d at 735.

**Constitutionality**

There is one loose end. The trial justice did not base his denial of defendant's motion solely on the ground that this case involved retroactive application of § 12-19-18(b); instead, he concluded that, even disregarding the retroactivity issue, § 12-19-18(b) constituted an unconstitutional legislative exercise of judicial power because the statute purports to affect a judgment of the Superior Court embodying the adjudication of probation violation and the

---

[12] Additionally, we pause to note that our decision in State v. Garnetto, 75 R.I. 86, 63 A.2d 777 (1949)—on which the trial justice relied for his conclusion that a case such as this one involved retroactive application of § 12-19-18(b), see State v. Ford, No. P2/05-83A, 2012 WL 3638916, at *8 (R.I. Super. Ct. Aug. 20, 2012)—is distinguishable. To be sure, in Garnetto, 75 R.I. at 87-88, 63 A.2d at 777-78, as in this case, the suspended sentence was imposed prior to the effective date of the relevant statute. Critically, however, the defendant in Garnetto was, unlike in this case, adjudged to be a violator—and the trial justice executed his suspended sentence and incarcerated him—prior to the statute's enactment. See id. at 87-88, 63 A.2d at 778. Therefore, unlike in this case, the triggering events in Garnetto predated the statute.

execution of all or a portion of a previously imposed suspended sentence. See Ford, 2012 WL 3638916, at *14, *19. Because this conclusion is not tethered to a case involving retroactive application, it effectively declares the statute unconstitutional in all cases involving prospective application: where, as here, the three triggering events occur after the 2010 amendment to § 12 19-18. The trial justice reached this conclusion sua sponte.

After scouring the record, we are convinced that the question of whether § 12-19-18(b) is constitutional when applied prospectively was not raised by either party below. To be sure, the state argued that, if applied retroactively, the statute would be unconstitutional under separation-of-powers principles. That argument, however, was founded on the premise that the application of the statute modified the 2009 judgment embodying the imposition of the suspended sentence—a premise that we reject. The state did not argue that, if this case involved prospective, and not retroactive, application of the statute, § 12-19-18(b) was unconstitutional. In sum, the state argued that this case involved a retroactive application of § 12-19-18(b) and, for that reason, resulted in an unconstitutional application of the statute, but the trial justice not only agreed that this case concerned a retroactive application of the statute, but went on to conclude that the statute was unconstitutional even when applied prospectively.

The distinction between the state's argument below and the trial justice's decision may be subtle, but it is of critical importance to the responsibility of this Court. When, as in this case, this Court faces a fork in the road, with one turn that will require it to slog through the thicket of a constitutional issue and the other offering a journey through more hospitable terrain, we routinely elect to take the path of least resistance. See In re Brown, 903 A.2d 147, 151 (R.I. 2006) ("Neither this Court nor the Superior Court should decide constitutional issues unless it is absolutely necessary to do so."); Caron v. Town of North Smithfield, 885 A.2d 1163, 1165 (R.I.

- 13 -

2005) (mem.) ("[T]his Court has on many occasions held that it will not decide a case on constitutional grounds if it otherwise can be decided."). Such a route exists in this case.

The trial justice was without authority to raise and decide, sua sponte, a constitutional issue that was not squarely placed before him by the parties. See In re Brown, 903 A.2d at 151; Devane v. Devane, 581 A.2d 264, 264 (R.I. 1990) ("[A] trial justice has no standing sua sponte to attack the constitutionality of a statute when neither party to the litigation has lodged a constitutional challenge."); see also Butti v. Rossi, 617 A.2d 881, 883 (R.I. 1992); Outlet Communications, Inc. v. State, 588 A.2d 1050, 1052 (R.I. 1991); Easton's Point Association v. Coastal Resources Management Council, 522 A.2d 199, 202 (R.I. 1987). As this Court explained in Devane, 581 A.2d at 265, "[I]t is clear and imperative that a trial justice, in the exercise of his or her judicial authority, not resolve a constitutional issue unless and until such issue is actually raised by the parties to the controversy and a necessity for such a decision is clear and imperative." Therefore, we must vacate the trial justice's decision on this point, see In re Brown, 903 A.2d at 151; in doing so, we necessarily express no opinion on the constitutionality of § 12-19-18(b) when applied prospectively.

## Conclusion

For the reasons articulated above, we vacate the trial justice's denial of the defendant's § 12-19-18(b) motion and remand for proceedings consistent with this opinion.

- 14 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      State v. Robert Beaudoin.

**CASE NO:**      No. 2013-254-C.A.
(P2/09-51A)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  April 26, 2016

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice William E. Carnes, Jr.

**ATTORNEYS ON APPEAL:**

For State:  Christopher R. Bush
Department of Attorney General

For Defendant:  Kara J. Maguire
Office of the Public Defender